### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

**CHARLES HIGHSMITH**
     **3047 Desert Palm Court**
     **Dumfries, VA 22026**

**and**

**SHEILA HIGHSMITH**
     **3047 Desert Palm Court**
     **Dumfries, VA 22026**

     **Plaintiffs.**

                                   **File No. _____**

**v.**

**UNITED STATES OF AMERICA,**          **COMPLAINT**

     **Defendant.**

**Serve On:**    **United States Attorney for the**
              **District of Maryland**
              **36 S. Charles Street, 4th Fl.**
              **Baltimore, MD 21201**

**Serve On:**    **William Barr**
              **ATTN: Civil Division**
              **U.S. Attorney General's Office**
              **950 Pennsylvania Ave, N.W.**
              **Washington, D.C. 20530-00001**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

COME NOW the Plaintiffs, Charles Highsmith and Sheila Highsmith, by and through their attorneys, Dov Apfel, Seth L. Cardeli, and Levin & Perconti, and hereby sue the Defendant United States of America, and, in support thereof, the Plaintiffs respectfully state as follows:

### <u>INTRODUCTION</u>

1.    On September 11, 2018, the Plaintiff, Charles Highsmith ("Mr. Highsmith"), underwent a neck dissection at Walter Reed National Military Medical Center. During the

procedure, the United States of America negligently dissected Mr. Highsmith's internal carotid artery causing severe and debilitating injuries, including a stroke, brain damage, and their sequela.

2.      This is a medical negligence action in which the Plaintiff, Charles Highsmith suffered severe, disabling, and permanent brain damage and its sequelae because the United States of America and its health care providers, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D.: (1) failed to properly inform Mr. Highsmith of the available treatment options and the risks and benefits of each treatment option; (2) performed a modified radical neck dissection, when the patient had opted for a selective neck dissection; (3) failed to properly identify the external carotid artery and internal carotid artery during the surgery on September 11, 2018; (4) negligently ligated the internal carotid artery during the surgery; (5) failed to timely and appropriately identify that the internal carotid artery had been severed; (6) failed to intraoperatively request a vascular consult; (7) negligently closed up and ended the surgery without recognizing that the internal carotid artery was cut, instead of the external carotid artery; and (8) otherwise failed to appropriately perform Mr. Highsmith's surgery on September 11, 2018.

3.      The Defendant's violations of the standards of care proximately caused Mr. Highsmith to suffer, among other things, ligation of his internal carotid artery, hemorrhage, stroke, brain damage, neurological injuries, cognitive and motor dysfunction, speech and language difficulties, pain, suffering, and mental anguish, diminished enjoyment and quality of life, diminished earning capacity, and other sequelae.

4.      In this Complaint, whenever the term "Defendant" or the United States of America is used, it is intended to include the United States of America and its officers, agents, servants, employees, and/or representatives. Whenever in this Complaint it is alleged that a health care provider did any act or thing, it is meant to include and allege that the United States of America's

officers, agents, servants, employees, and/or representatives did such act or thing, and that, at the time such act or thing was done, it was done with the full authorization and ratification of the United States of America and was done in the normal and routine course and scope of the health care provider's employment.  Whenever in this Complaint it is alleged that a health care provider omitted any act or thing, it is meant to include and allege that the United States of America's officers, agents, servants, employees, and/or representatives omitted such act or thing.

**JURISDICTION AND PARTIES**

5.      On December 6, 2018, the Plaintiff, Charles Highsmith, submitted administrative claim Form 95, attached hereto as Exhibit A, to the United States Department of Navy. Said Notice was timely and properly submitted and served pursuant to 28 U.S.C. § 2672 and 2675(a) and 28 CFR § 14.2. The claims were acknowledged on December 7, 2018 on behalf of the agency by the Department of the Navy, Office of the Judge Advocate General, Tort Claims Unit Norfolk. On January 13, 2020, the Department of the Navy denied the claims of the Plaintiff, Charles Highsmith.

6.      On May 19, 2020, the Plaintiff, Charles Highsmith, submitted an amended administrative claim Form 95, attached hereto as Exhibit B, to the United States Department of Navy. Said Notice was timely and properly submitted and served pursuant to 28 U.S.C. § 2672 and 2675(a) and 28 CFR § 14.2. The claims were acknowledged by Kristina Schlieter on behalf of the agency by the Department of the Navy, Office of the Judge Advocate General, Tort Claims Unit Norfolk. On June 25, 2020, the Department of the Navy denied the amended claims of the Plaintiff, Charles Highsmith, attached hereto as Exhibit C.

7.      On May 19, 2020, the Plaintiff, Sheila Highsmith, submitted administrative claim Form 95, attached hereto as Exhibit D, to the United States Department of Navy. Said Notice was

timely and properly submitted and served pursuant to 28 U.S.C. § 2672 and 2675(a) and 28 CFR § 14.2. The claims were acknowledged by Kristina Schlieter on behalf of the agency by the Department of the Navy, Office of the Judge Advocate General, Tort Claims Unit Norfolk. On June 25, 2020, the Department of the Navy denied the claims of the Plaintiff, Sheila Highsmith, attached hereto as Exhibit E.

8.      Pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 3-2A-04 (a) and (b), Plaintiffs filed an Amended Statement of Claim and a Certificate of Qualified Expert and Information Report signed by James Salata, M.D. and an Election to Waive Arbitration was also filed with the Health Care Alternative Dispute Resolution Office of Maryland, copies of which are attached hereto as Exhibits F. The damages sought exceed more than the limit of concurrent jurisdiction of the District Court.

9.      A copy of the Order of Transfer for *Charles Highsmith, et al. v. USA*, HCA No. 2020-475 is attached hereto as Exhibit G.

10.     At all times relevant to this action, the Plaintiffs, Charles Highsmith and Sheila Highsmith, were residents and citizens of the Commonwealth of Virginia, residing in Prince William County. At all times relevant, the Plaintiff Charles Highsmith was a patient of the Defendant United States of America, who received negligent and improper medical care.

11.     At all times relevant, the United States of America was the employer of health care providers, who administered care and treatment to the Plaintiff, Charles Highsmith.  These health care providers were the actual and/or apparent agents, servants, and/or employees of the United States of America, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., while Charles Highsmith was a patient at the Walter Reed National Military Medical Center (hereinafter referred to as "Walter Reed") in Bethesda, Maryland.

4

12.     This is a medical negligence action brought under the "Federal Tort Claims Act" (hereinafter "FTCA"), for severe and permanent injuries arising out of the negligent or wrongful acts and/or omissions of employees, actual and/or apparent agents, servants, or representatives of the United States of America, while acting within the course and scope of their employment, actual and/or apparent authority, servitude, or representative capacity, and under circumstances where the United States of America, if a private person, would be liable to the Plaintiff under the laws of Maryland, where the acts or omissions occurred.  *See* 28 U.S.C. §1346(b).

13.     Jurisdiction is invoked pursuant to 28 U.S.C. § 1346(b) and 28 U.S.C. §2671 *et seq.,* which vest exclusive subject matter jurisdiction of Federal Tort Claims against the United States in the Federal District Court.

14.     The Health Care Provider, United States of America, may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Amended Statement of Claim on Robert K. Hur, United States Attorney for the District of Maryland, and/or a designated agent for service of process at 36 South Charles Street, 4th Floor, Baltimore, MD, 21201; by serving a copy of the Amended Statement of Claim on Attorney General of the United States of America, William Barr by certified mail, return receipt requested, at the U.S. Attorney General's Office, 950 Pennsylvania Ave, N.W., Washington, D.C. 20530-00001, to the attention of the Civil Division.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the United States is a Defendant, a substantial part of the events or omissions giving rise to the claim occurred in that District, and no real property is involved in the action.

16.     The United States Navy is an agency of the United States of America. The United States of America, through its agency, the United States Navy, at all times hereto, owned, operated,

and controlled the health care facility known as Walter Reed, and through its agency, the United States Navy staffed said health care facilities with its agents, servants, and/or employees.

17.     At all times material hereto, all persons involved in the medical and health care services provided to the Plaintiff, Mr. Highsmith, at Walter Reed, or some other agency thereof, including, but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D., were the servants, actual and/or apparent agents, employees, and representatives of the United States and acting within the course and scope of such employment.

18.     The Plaintiffs have complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.

## FACTUAL BACKGROUND

19.     On May 23, 2018, Mr. Highsmith was seen by Dr. Pryor Brenner, an otolaryngologist (ENT), at Malcolm Grow Medical Clinics and Surgery Center at Joint Base Andrews. He reported that he had had a right neck mass for approximately 7-10 days, and that he had been previously seen by an urgent care center, while out-of-state, and was told to follow up with an ENT. Dr. Brenner noted that Mr. Highsmith had been to the Emergency Room at Ft. Belvoir Community Hospital and received a neck CT.

20.     At all times relevant herein, Dr. Pryor Brenner was an agent, servant, representative, and/or employee of the Defendant United States of America.

21.     Dr. Brenner performed an incision and drainage (I&D) of the mass and instructed Mr. Highsmith to take antibiotics.

22.     On May 30, 2018, Mr. Highsmith returned to Dr. Brenner for a follow-up of the I&D. Dr. Brenner noted that the cultures and gram stain were negative. He noted that Mr. Highsmith had no fevers, no swallowing or voice problems, and was taking the antibiotics as

instructed.

23.     On July 16, 2018, Mr. Highsmith returned to Dr. Brenner with complaints of continued pain and fullness from the right neck mass. Dr. Brenner noted no response to the long course of antibiotics.

24.     On July 20, 2018, Dr. Brenner performed an excisional right neck biopsy of the mass.

25.     On July 27, 2018, Mr. Highsmith returned to Dr. Brenner for a post-operative visit and wound check. The preliminary pathology report was noted to be very concerning for a malignant process. Dr. Brenner ordered a PET Whole Body Survey.

26.     On August 8, 2018, Dr. Brenner wrote that the patient was pending an MRI of his neck and that he was sending him to be seen by the Bethesda Head and Neck ("H&N") team.

27.     On or about August 22, 2018, Mr. Highsmith was seen by Dr. Cardoni and a resident, Phoebe E. Riley, M.D.

28.     On August 26, 2018, Dr. Cardoni scheduled the patient for an exam under anesthesia and biopsy, and noted that, if the primary is the right tonsil, Mr. Highsmith would be an excellent candidate for TORS radical tonsillectomy.

29.     Neither Dr. Cardoni, nor any other physician at Walter Reed, recommended or offered Mr. Highsmith the option of an oncology or radiation oncology consultation prior to his surgery on September 11, 2018.

30.     On September 6 and 7, 2018, Mr. Highsmith received a series of phone calls from a nurse consultant, Ebony Y. Stewart, and Dr. Craig, insisting that he come in for a pre-operative visit on September 10, 2018 (Monday), and that the surgery be scheduled on September 11, 2018 (Tuesday). When Mr. Highsmith told Ms. Stewart and Dr. Craig that he could not make those dates

work, he was told that delaying the surgery could lead to a different outcome.

31.     On September 7, 2018, Mr. Highsmith called back Ms. Stewart, and said that he would come in on Monday, September 10, 2018, for the pre-operative visit, and on Tuesday, September 11, 2018, for the surgery.

32.     On September 10, 2018, Mr. Highsmith was seen by Dr. Cardoni and Charles Q. Yang, M.D. ("Dr. Yang"), a resident. At that visit, Mr. Highsmith was told that the surgery would have to be staged due to robot servicing issues at Walter Reed.

33.     At the visit on September 10, 2018, Dr. Yang noted that Mr. Highsmith consented to a right Selective Neck Dissection ("SND") only, and that the TORS tonsillectomy would take place at a later time.

34.     There is nothing documented contemporaneously in the records for the September 10, 2018, visit that Dr. Cardoni, or any other physician, recommended or offered Mr. Highsmith the option of radiotherapy, instead of surgery.

35.     On September 11, 2018, Mr. Highsmith presented to Walter Reed for a selective neck dissection. The History and Physical ("H&P") noted that Mr. Highsmith "[w]as planning TORS tonsillectomy and right SND but due to robot servicing issues presently, will plan for staged procedures by performing SND as planned on 9/11/2018 with subsequent TOR tonsillectomy at a later date potentially once a robot is available."

36.     In an addendum to the H&P, Dr. Cardoni noted that Mr. Highsmith had selected definitive surgical therapy in the form of TORS right radical tonsillectomy and right modified radical neck dissection.

37.     On September 11, 2018, Mr. Highsmith's neck dissection was performed by Dr. Cardoni and Dr. Yang. During the neck dissection, Mr. Highsmith's internal carotid artery was

8

dissected.

38.     During the neck dissection on September 11, 2018, neither Dr. Cardoni nor Dr. Yang identified that Mr. Highsmith's internal carotid artery had been dissected.

39.     Neither Dr. Cardoni, nor any other physician at Walter Reed, recommended or offered Mr. Highsmith the option of an oncology or radiation oncology consultation prior to his surgery on September 11, 2018.

40.     At no time during the neck dissection on September 11, 2018, did Dr. Cardoni or Dr. Yang request a vascular consultation.

41.     On September 12, 2018, at approximately 4:17, Dr. Cardoni and Dr. Yang wrote a brief operative report describing Mr. Highsmith's direct laryngoscopy and right neck dissection. They noted that there was estimated blood loss (EBL) of 75 ml and 6 specimens were sent to pathology. Nothing was noted in the brief operative report about the dissection of the internal carotid artery.

42.     While recovering in the postop ward, Mr. Highsmith began developing stroke-like symptoms, such as left facial droop, dysarthria, and right upper extremity weakness. A head CT was performed to rule out hemorrhagic stroke.

43.     An MRI was performed, which showed: (1) Acute infarctions of the right insular cortex and right frontal lobe of a likely embolic etiology; (2) Abnormal signal within the visualized right internal carotid artery consistent with thrombosis, likely secondary to the patient's suspected short segment dissection of the proximal right internal carotid artery.

44.     An MRA also was performed, which was interpreted as showing a short segment dissection within the proximal right internal carotid artery with thrombus formation distally.

45.     The critical findings in the MRI and MRA were identified by the radiologist, Dr.

9

Allen Nawrocki, at 7:00 a.m. on September 12, 2018, and discussed with Dr. Kyle Mikals at 7:05 a.m. on September 12, 2018.

46.    As the discharge summary explained, "Brain MRI and MRA were obtained which demonstrated absent flow distal to the proximal cervical right internal carotid artery which confirmed that it was unfortunately the right internal carotid artery that was ligated intraoperatively."

47.    Mr. Highsmith was treated with aspirin and Lipitor, and was brought to the Intensive Care Unit ("ICU") for neurologic monitoring.

48.    On September 12, 2018, Mr. Highsmith developed acute right neck swelling, concerning for neck hematoma, and was brought back to the operating room for hematoma evacuation, and control of hemorrhage from a branch of the right facial artery.

49.    On September 12, 2018, at approximately 17:25, Dr. Cardoni, Dr. Yang, and Yianne Kritzas, M.D., a resident, wrote a brief operative report describing Mr. Highsmith's second surgery: right neck exploration, evacuation of hematoma, and control of hemorrhage. They recorded that intraoperatively it was noted that a branch of the right facial artery was missing a ligation clip, the surgical site was irrigated, and they secured the branch on the right facial artery. It was noted that the assistants on the surgery were Dr. George Lee Coppit, Dr. Samantha Mikals, Dr. Nathaniel Miller, and Dr. Nicholas Novak.

50.    After the September 12, 2018 surgery, Mr. Highsmith was given clinical recommendations from psychiatry, neurology, social work, physical therapy, occupational therapy, discharge planner, and the otolaryngology (ENT) team.

51.    While Mr. Highsmith was still at Walter Reed, Dr. Cardoni told Mr. Highsmith and his family that he had made an error and ligated the right internal carotid artery. Dr. Cardoni was

tearful during this conversation and claimed that the errors were a result of Mr. Highsmith's anatomy.

52.     During the conversation with Mr. Highsmith and his family, Dr. Cardoni drew a picture of his surgical error and gave it to Mr. Highsmith.

53.     Dr. Cardoni provided Mr. Highsmith with the Healthcare Resolutions Point of Contact at Walter Reed.

54.     On September 20, 2018, Mr. Highsmith was finally discharged from Walter Reed. He was ordered to follow-up with George Lee Coppit, M.D. on September 27, 2018, as it was noted that Dr. Cardoni was out of the country.

55.     On September 27, 2018, Mr. Highsmith was seen by Dr. Coppit and Forrest D. Craig, M.D. They noted that Mr. Highsmith's hospital course was complicated by right internal carotid artery injury and subsequent foci of neurological deficits pertaining to right frontal and right insular cortices. Dr. Coppit and Dr. Craig also noted that the right internal carotid artery had been ligated intra-operatively.

56.     As a direct result and proximate cause of the negligent medical care that he received at Walter Reed, the Plaintiff, Mr. Highsmith, sustained significant and permanent brain damage and other injuries. Had Mr. Highsmith been properly informed of the treatment options and/or had the surgery been properly performed, he would not have suffered the permanent neurological damage, and its lifelong sequelae.

## COUNT I: MEDICAL NEGLIGENCE

57.     The Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs, including each and every factual and legal allegation hereinbefore and hereinafter alleged, and hereby re-adopt and re-allege

each such allegation.

58.     At all times relevant and material hereto, the Defendant, the United States of America, and its agents, servants, representatives, and employees, had a duty to diagnose, treat, protect, and provide hospital, medical, and nursing care in accordance with accepted or prevailing standards of medical and hospital care.

59.     Notwithstanding these duties, the Defendant, the United States of America, and its servants, agents, and/or employees, including but not limited to Wayne Cardoni, D.O., Charles Q. Yang, M.D., and the surgical team that participated in Mr. Highsmith's neck dissection on September 11, 2018, were negligent and their acts and/or omissions fell below acceptable standards of care in one or more of the following ways:

    a.  Failing to obtain and/or offer a medical oncology or radiological oncology consultation prior to the neck dissection;

    b.  Failing to have proper procedures in place and/or failing to follow proper procedures concerning the performance of surgical procedures, including neck dissections;

    c.  Failing to adequately instruct, train, supervise, educate or credential its actual or apparent employees, agents, and/or representatives, including residents and/or fellows, with respect to the performance of surgical procedures, including neck dissections;

    d.  Failing to provide appropriately trained and skilled personnel to care for Mr. Highsmith before, during, and after his neck dissection;

    e.  Failing to establish, promote, follow, or enforce appropriate chain of command rules, policies, procedures, protocols, or guidelines in response to physicians'

acts or omissions that are likely to lead to serious injury or death;

f.   Failing to offer and/or recommend a less substantial and invasive procedure;

g.   Failing to identify anatomical landmarks, including the internal and external carotid arteries during the surgery;

h.   Failing to identify branches of the external carotid artery before ligating the artery;

i.   Ligating the internal carotid artery;

j.   Failing to timely and appropriately recognize that the internal carotid artery was ligated;

k.   Failing to order a vascular consult during the neck dissection;

l.   Closing up and completing the procedure without identifying and recognizing that Mr. Highsmith's internal carotid artery had been severed;

m.   Failing to otherwise perform the neck dissection in accordance with the applicable standards of care;

n.   Failing to timely and properly record all relevant and necessary information concerning the extent and substance of the neck dissection, including the times the care was rendered, and the identity of the persons who were present and providing the care to Mr. Highsmith; and

o.   Other negligent acts and/or omissions in the care and treatment of Mr. Highsmith that may be discovered and become known during the course of discovery.

60.    At all times mentioned herein and material to this Complaint, the employees, servants, and/or agents of the Defendant, including, but not limited to Wayne Cardoni, D.O.,

Charles Q. Yang, M.D., and the surgical team that participated in Mr. Highsmith's neck dissection, were negligent and such negligence directly and proximately caused the injuries and damages sustained by the Plaintiffs.

61.    Had the Defendant, the United States of America, by and through its actual and/or apparent agents, servants, and/or employees, caring for Mr. Highsmith complied with the applicable standards of care, Mr. Highsmith would have avoided sustaining severe and permanent injuries.

62.    As a direct and proximate cause of the individual, joint, consecutive, and concurrent negligent actions and/or omissions of the Defendant, and its agents, servants, and/or employees, including, but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D., the Plaintiff, Mr. Highsmith, sustained a severed internal carotid artery, stroke, brain damage, and their sequelae. These injuries were a result of inappropriate, substandard, and negligent medical care provided by Wayne Cardoni, D.O., Charles Q. Yang, M.D., and the surgical team that was responsible for performing Mr. Highsmith's neck dissection on September 11, 2018.

63.    The anatomical structures should have been easily identified by Dr. Cardoni, Dr. Yang, and the surgical team, and, as a result of their inappropriate, substandard, and negligent medical care, Mr. Highsmith suffered, and will continue to suffer, severe and permanent brain damage and neurologic injury and its sequelae, including, but not limited to: cognitive and motor dysfunction; speech and language difficulties; pain, suffering, and mental anguish; diminished enjoyment and quality of life; post-traumatic stress disorder; and diminished earning capacity and lost future wages.

64.    As a further direct and proximate cause of the individual, joint, consecutive, and concurrent inappropriate, substandard, and negligent actions and/or omissions by the Defendant,

United States of America, and its employees, agents, and/or servants, the Plaintiff, Mr. Highsmith, has required, and will continue to require, substantial medical, nursing, attendant, and related care; various types of therapies, such as physical, occupational, speech, rehabilitation, psychological, and pharmaceutical therapies; and other attendant care and assistance with the activities of daily living, for all of which significant sums of money have been, and will continue to be, expended.

65.     As a direct and proximate cause of the individual, joint, consecutive, and concurrent negligent actions and/or omissions of the Defendant, the United States of America, and its employees, agents, and/or servants, including but not limited to Wayne Cardoni, D.O., Charles Q. Yang, M.D., and the surgical team at Walter Reed, and the resulting injuries sustained by Mr. Highsmith, the Plaintiff, Sheila Highsmith, has, and will continue to, suffer mental pain, emotional anguish, loss of enjoyment of life, and a loss of Mr. Highsmith's services, companionship, and consortium.

## COUNT II: LACK OF INFORMED CONSENT

66.     The Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs, including each and every factual and legal allegation hereinbefore and hereinafter alleged, and hereby re-adopt and re-allege each such allegation.

67.     Upon submitting to the medical care and treatment of the Defendant herein, Mr. Highsmith reasonably relied upon the expertise of the Defendant, United States of America, acting through its agents, servants, and/or employees, including, but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D., who had a duty to explain the treatment to the Plaintiff and to advise of any material risks, benefits, and alternatives of the treatment so that the Plaintiff could make an intelligent and informed decision about whether or not to go forward with the proposed treatment.

68.     Defendant, United States of America, acting through its agents, servants, and/or employees, including, but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D., failed to adequately and fully inform the Plaintiff, Mr. Highsmith, about the treatment and to advise him of any material risks, benefits, and alternatives of the treatment so that he could make an intelligent and informed decision.

69.     Defendant, United States of America, acting through its agents, servants, and/or employees, including, but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D., failed to adequately inform Mr. Highsmith of the available alternative treatments, including, but not limited to, oncology consultations, radiation therapy as an initial treatment, and/or less extensive and invasive surgical procedures.

70.     After Mr. Highsmith elected to proceed with a selective (or limited) neck dissection, the United States of America, acting through its agents, servants, and/or employees, including, but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D., on their own accord, and without the prior consent and permission of the Plaintiff, performed a much more extensive and aggressive modified radical neck dissection.

71.     Defendant, United States of America, acting through its agents, servants, and/or employees, including, but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D., failed to obtain informed consent from the Plaintiff prior to undertaking to perform the medical procedures and surgery that he underwent on September 11, 2018.

72.     The Defendant, the United States of America, acting through its agents, servants, and/or employees, including, but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D., was negligent and fell below acceptable standards of care in one or more of the following ways:

         a.   Failed to obtain the Plaintiff's informed consent relative to the medical treatment

that was offered and recommended;

    b.   Failed to obtain the Plaintiff's informed consent for the procedure that was actually performed during the surgery;

    c.   Failed to disclose to the Plaintiff the alternatives to, and the reasonably foreseeable risks and benefits of, the medical treatment that was recommended and performed,

    d.   Failed to act as reasonable medical practitioners under the same or similar circumstances,

    e.   Failed to disclose relevant and material information, in a manner permitting the Plaintiff to make a knowledgeable and prudent decision and evaluation about other available treatments and procedures; and

    f.   Failed to disclose the risks and hazards of the medical treatment recommended and performed in a timely and appropriate manner that would have permitted the Plaintiff to make a knowledgeable and prudent decision regarding the medical treatment that was recommended and performed.

73. Had the Defendant, United States of America, acting through its agents, servants, and/or employees, including, but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D., disclosed the alternatives to, and the risks, hazards and benefits of, the medical treatment recommended and performed, the Plaintiff, as a reasonable person, would not have consented to the surgical procedure and would have opted to first obtain an oncology consultation and to consider non-surgical radiation therapy.

74. The failure of Defendant, the United States of America, and its agents, servants, and/or employees to obtain an informed consent to the procedures and surgery that was performed, was a direct and proximate cause of the injuries, harms, and losses sustained by the Plaintiffs.

75.     As a direct and proximate cause of the individual, joint, consecutive, and concurrent negligent actions and/or omissions of the Defendant, and its agents, servants, and/or employees, including, but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D., the Plaintiff, Mr. Highsmith, sustained a severed internal carotid artery, stroke, brain damage, and their sequelae. These injuries were a result of inappropriate, substandard, and negligent medical care, and a lack of informed consent.

76.     As a result of inappropriate, substandard, and negligent medical care, and a lack of informed consent, Mr. Highsmith suffered, and will continue to suffer, severe and permanent brain damage and neurologic injury and its sequelae, including, but not limited to: radical neck dissection and follow-up surgeries; neurologic injuries; cognitive and motor dysfunction; speech and language difficulties; pain, suffering, and mental anguish; diminished enjoyment and quality of life; post-traumatic stress disorder; and diminished earning capacity and lost future wages.

77.     As a further direct and proximate cause of the individual, joint, consecutive, and concurrent inappropriate, substandard, and negligent actions and/or omissions and a lack of informed consent by the Defendant, the United States of America, and its employees, agents, and/or servants, the Plaintiff, Mr. Highsmith, has required, and will continue to require, substantial medical, nursing, attendant, and related care; various types of therapies, such as physical, occupational, speech, rehabilitation, psychological, and pharmaceutical therapies; and other attendant care and assistance with the activities of daily living, for all of which significant sums of money have been, and will continue to be, expended.

78.     As a direct and proximate cause of the individual, joint, consecutive, and concurrent negligent actions and/or omissions and lack of informed consent by the Defendant, the United States of America, and its employees, agents, and/or servants, including but not limited to Wayne

Cardoni, D.O. and Charles Q. Yang, M.D., and the resulting injuries sustained by Mr. Highsmith, the Plaintiff, Sheila Highsmith, has suffered, and will continue to suffer, mental pain, emotional anguish, loss of enjoyment of life, and a loss of Mr. Highsmith's services, companionship, and consortium.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Plaintiffs, Charles Highsmith and Sheila Highsmith, respectfully pray that this case proceed to trial, and that the Plaintiffs recover a judgment against the Defendant, the United States of America, and an award in their favor for actual damages in the amount of FORTY MILLION DOLLARS ($40,000,000.00) for their economic and non-economic injuries, harms, and losses, pre- and post-judgment interest, costs and expenses, attorney's fees, and all other and further relief and damages to which the Plaintiffs may be justly and properly entitled.

Dated this 9th day of November 2020.

Respectfully submitted,

/s/ *Seth Cardeli*
Dov Apfel (#07187)
da@levinperconti.com
Seth L. Cardeli (#07212)
slc@levinperconti.com
Levin & Perconti
325 North LaSalle Drive
Suite 300
Chicago, Illinois 60654
Telephone: (312) 332-2872
Facsimile: (312) 332-3112
*Attorneys for Plaintiffs*