**EXHIBIT F**

| | | |
|---|---|---|
| CHARLES HIGHSMITH | * | **IN THE** |
| 3047 Desert Palm Ct | | |
| Dumfries, VA 22026 | * | **HEALTH CARE** |
| | | |
| and | * | **ALTERNATIVE DISPUTE** |
| | | |
| SHEILA HIGHSMITH | * | **RESOLUTION OFFICE** |
| 3047 Desert Palm Ct | | |
| Dumfries, VA 22026 | * | |
| | | |
| CLAIMANTS | * | HCADRO No.: 2020-475 |
| | | |
| v. | * | |
| | | |
| UNITED STATES OF AMERICA | * | |
| | | |
| Serve On:   United States Attorney for the | * | |
| District of Maryland | | |
| 36 S. Charles Street, 4th Fl. | * | |
| Baltimore, MD 21201 | | |
| | * | |
| Serve On:   William Barr | | |
| ATTN: Civil Division | * | |
| U.S. Attorney General's Office, | | |
| 950 Pennsylvania Ave, N.W., | * | |
| Washington, D.C. 20530-00001 | | |
| | * | |
| HEALTH CARE PROVIDERS. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>AMENDED STATEMENT OF CLAIM</u>

COME NOW the Claimants, Charles Highsmith and Sheila Highsmith, by and through their attorneys, Dov Apfel, Seth L. Cardeli, and Janet, Janet & Suggs, LLC, and hereby sue the United States of America, and, in support thereof, the Claimants respectfully state as follows:

## <u>INTRODUCTION</u>

This is a medical negligence action arising from acts and/or omissions related to the medical care and treatment of Charles Highsmith by the United States of America, directly and as the actual and/or apparent principal, master, and/or employer of physicians, nurses, and/or

1

technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D.

On September 11, 2018, the Claimant, Charles Highsmith, underwent a neck dissection at Walter Reed National Military Medical Center. During the procedure, the Health Care Providers negligently dissected Mr. Highsmith's internal carotid artery causing severe and debilitating injuries, including a stroke, brain damage, and their sequelae. In violation of the applicable standards of care, the Health Care Providers failed to obtain Mr. Highsmith's informed consent, and failed to order appropriate pre-surgical consultations by both medical and radiological oncologists. Additionally, the Health Care Providers negligently performed the neck dissection by performing an overly-aggressive surgical procedure, by unknowingly ligating the internal carotid artery, and by failing to recognize and treat the surgical error before the surgery was completed and the patient was brought to recovery.

The Health Care Providers' violations of the standards of care have caused Mr. Highsmith to suffer, among other things, ligation of his internal carotid artery, hemorrhage, stroke, brain damage, neurological injuries, cognitive and motor dysfunction, speech and language difficulties, pain, suffering, and mental anguish, diminished enjoyment and quality of life, diminished earning capacity, and other sequelae.

In this Amended Statement of Claim, whenever the term "Health Care Provider" is used, it means the United States of America and its officers, agents, servants, employees, and/or representatives. Whenever in this Amended Statement of Claim it is alleged that a Health Care Provider did any act or thing, it is meant to include and allege that the United States of America's officers, agents, servants, employees, and/or representatives did such act or thing, and that, at the time such act or thing was done, it was done with the full authorization and ratification of the United States of America and was done in the normal and routine course and scope of the Health

Care Provider's employment. Whenever in this Amended Statement of Claim it is alleged that a Health Care Provider omitted any act or thing, it is meant to include and allege that the United States of America's officers, agents, servants, employees, and/or representatives omitted such act or thing.

## JURISDICTION AND PARTIES

1.      This medical negligence claim is instituted pursuant to Maryland Code Ann. Cts. & Jud. Proc. §§ 3-2A-01 to 3-2A-10.

2.      At all times relevant to this action, the Claimants, Charles Highsmith and Sheila Highsmith, were residents and citizens of the Commonwealth of Virginia, residing in Prince William County. At all times relevant, the Claimant Charles Highsmith was a patient of each of the Health Care Providers named herein, for the purpose of receiving medical care and treatment.

3.      At all times relevant, the United States of America was the employer of health care providers, who administered care and treatment to the Claimant, Charles Highsmith. These health care providers were the actual and/or apparent agents, servants, and/or employees of the United States of America, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., while Charles Highsmith was at the Walter Reed National Military Medical Center (hereinafter referred to as "Walter Reed") in Bethesda, Maryland.

4.      This is a medical negligence action brought under the "Federal Tort Claims Act" (hereinafter "FTCA"), for severe and permanent injuries arising out of the negligent or wrongful acts and/or omissions of employees, actual and/or apparent agents, servants, or representatives of the United States of America, while acting within the course and scope of their employment, actual and/or apparent authority, servitude, or representative capacity, and under circumstances where the United States of America, if a private person, would be liable to the Claimant under the laws

of Maryland, where the acts or omissions occurred.  *See* 28 U.S.C. §1346(b).

5.      Jurisdiction is invoked pursuant to 28 U.S.C. § 1346(b) and 28 U.S.C. §2671 *et seq.,* which vest exclusive subject matter jurisdiction of Federal Tort Claims against the United States in the Federal District Court.

6.      The Health Care Provider, United States of America, may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Amended Statement of Claim on Robert K. Hur, United States Attorney for the District of Maryland, and/or a designated agent for service of process at 36 South Charles Street, 4th Floor, Baltimore, MD, 21201; by serving a copy of the Amended Statement of Claim on Attorney General of the United States of America, William Barr by certified mail, return receipt requested, at the U.S. Attorney General's Office, 950 Pennsylvania Ave, N.W., Washington, D.C. 20530-00001, to the attention of the Civil Division.

7.      Venue is proper in the United States District Court of Maryland Southern Division, pursuant to 28 U.S.C. § 1391(e), because the United States is a Health Care Provider and a substantial part of the events or omissions giving rise to the claim occurred in that District.

8.      The United States Navy is an agency of the United States of America. The United States of America, through its agency, the United States Navy, at all times hereto, owned, operated, and controlled the health care facility known as Walter Reed, and through its agency, the United States Navy staffed said health care facilities with its agents, servants, and/or employees.

9.      At all times material hereto, all persons involved in the medical and health care services provided to the Claimant, Mr. Highsmith, at Walter Reed, or some other agency thereof, including, but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D., were the servants, actual and/or apparent agents, employees, and representatives of the United States and acting

within the course and scope of such employment.

<u>**JURISDICTIONAL PREREQUISITES**</u>

10.     On December 6, 2018, the Claimant, Charles Highsmith, submitted administrative claim Form 95, attached to the Statement of Claim as Exhibit 1 and incorporated herein by reference, to the United States Department of Navy. Said Notice was timely and properly submitted and served pursuant to 28 U.S.C. § 2672 and 2675(a) and 28 CFR § 14.2. The claims were acknowledged on December 7, 2018 on behalf of the agency by the Department of the Navy, Office of the Judge Advocate General, Tort Claims Unit Norfolk. On January 13, 2020, the Department of the Navy denied the claims of the Claimant, Charles Highsmith.

11.     On May 19, 2020, the Claimant, Charles Highsmith, submitted an amended administrative claim Form 95, attached to the Statement of Claim as Exhibit 2 and incorporated herein by reference, to the United States Department of Navy. Said Notice was timely and properly submitted and served pursuant to 28 U.S.C. § 2672 and 2675(a) and 28 CFR § 14.2. The claims were acknowledged by Kristina Schlieter on behalf of the agency by the Department of the Navy, Office of the Judge Advocate General, Tort Claims Unit Norfolk. On June 25, 2020, the Department of the Navy denied the amended claims of the Claimant, Charles Highsmith, attached to the Statement of Claim as Exhibit 3 and incorporated herein by reference.

12.     On May 19, 2020, the Claimant, Sheila Highsmith, submitted administrative claim Form 95, attached to the Statement of Claim as Exhibit 4 and incorporated herein by reference, to the United States Department of Navy. Said Notice was timely and properly submitted and served pursuant to 28 U.S.C. § 2672 and 2675(a) and 28 CFR § 14.2. The claims were acknowledged by Kristina Schlieter on behalf of the agency by the Department of the Navy, Office of the Judge Advocate General, Tort Claims Unit Norfolk. On June 25, 2020, the Department of the Navy

denied the claims of the Claimant, Sheila Highsmith, attached to the Statement of Claim as Exhibit 5 and incorporated herein by reference.

13.     The amount of this claim exceeds $30,000.00.

14.     The Claimants have complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.

## **FACTUAL BACKGROUND**

15.     This is a medical negligence action in which the Claimant, Charles Highsmith ("Mr. Highsmith"), suffered severe, disabling, and permanent brain damage and its sequelae because the United States of America and the health care providers: (1) failed to properly inform Mr. Highsmith of the available treatment options and the risks and benefits of each treatment option; (2) performed a modified radical neck dissection, when the patient had opted for a selective neck dissection; (3) failed to properly identify the external carotid artery and internal carotid artery during the surgery on September 11, 2018; (4) negligently ligated the internal carotid artery during the surgery; (5) failed to timely and appropriately identify that the internal carotid artery had been severed; (6) failed to intraoperatively request a vascular consult; (7) negligently closed up and ended the surgery without recognizing that the internal carotid artery was cut, instead of the external carotid artery; and (8) otherwise failed to appropriately perform Mr. Highsmith's surgery on September 11, 2018.

16.     On May 23, 2018, Mr. Highsmith was seen by Dr. Pryor Brenner, an otolaryngologist (ENT), at Malcolm Grow Medical Clinics and Surgery Center at Joint Base Andrews. He reported that he had had a right neck mass for approximately 7-10 days, and that he had been previously seen by an urgent care center, while out-of-state, and was told to follow up with an ENT. Dr. Brenner noted that Mr. Highsmith had been to the Emergency Room at Ft.

Belvoir Community Hospital and received a neck CT.

17.     At all times relevant herein, Dr. Pryor Brenner was an agent, servant, representative, and/or employee of the Defendant United States of America.

18.     Dr. Brenner performed an incision and drainage (I&D) of the mass and instructed Mr. Highsmith to take antibiotics.

19.     On May 30, 2018, Mr. Highsmith returned to Dr. Brenner for a follow-up of the I&D. Dr. Brenner noted that the cultures and gram stain were negative. He noted that Mr. Highsmith had no fevers, no swallowing or voice problems, and was taking the antibiotics as instructed.

20.     On July 16, 2018, Mr. Highsmith returned to Dr. Brenner with complaints of continued pain and fullness from the right neck mass. Dr. Brenner noted no response to the long course of antibiotics.

21.     On July 20, 2018, Dr. Brenner performed an excisional right neck biopsy of the mass.

22.     On July 27, 2018, Mr. Highsmith returned to Dr. Brenner for a post-operative visit and wound check. The preliminary pathology report was noted to be very concerning for a malignant process. Dr. Brenner ordered a PET Whole Body Survey.

23.     On August 8, 2018, Dr. Brenner wrote that the patient was pending an MRI of his neck and that he was sending him to be seen by the Bethesda Head and Neck ("H&N") team.

24.     On or about August 22, 2018, Mr. Highsmith was seen by Dr. Cardoni and a resident, Phoebe E. Riley, M.D.

25.     On August 26, 2018, Dr. Cardoni scheduled the patient for an exam under anesthesia and biopsy, and noted that, if the primary is the right tonsil, Mr. Highsmith would be

an excellent candidate for TORS radical tonsillectomy.

26.     Neither Dr. Cardoni, nor any other physician at Walter Reed, recommended or offered Mr. Highsmith the option of an oncology or radiation oncology consultation prior to his surgery on September 11, 2018.

27.     On September 6 and 7, 2018, Mr. Highsmith received a series of phone calls from a nurse consultant, Ebony Y. Stewart, and Dr. Craig, insisting that he come in for a pre-operative visit on September 10, 2018 (Monday), and that the surgery be scheduled on September 11, 2018 (Tuesday). When Mr. Highsmith told Ms. Stewart and Dr. Craig that he could not make those dates work, he was told that delaying the surgery could lead to a different outcome.

28.     On September 7, 2018, Mr. Highsmith called back Ms. Stewart, and said that he would come in on Monday, September 10, 2018, for the pre-operative visit, and on Tuesday, September 11, 2018, for the surgery.

29.     On September 10, 2018, Mr. Highsmith was seen by Dr. Cardoni and Charles Q. Yang, M.D. ("Dr. Yang"), a resident. At that visit, Mr. Highsmith was told that the surgery would have to be staged due to robot servicing issues at Walter Reed.

30.     At the visit on September 10, 2018, Dr. Yang noted that Mr. Highsmith consented to a right Selective Neck Dissection ("SND") only, and that the TORS tonsillectomy would take place at a later time.

31.     There is nothing documented contemporaneously in the records for the September 10, 2018, visit that Dr. Cardoni, or any other physician, recommended or offered Mr. Highsmith the option of radiotherapy, instead of surgery.

32.     On September 11, 2018, Mr. Highsmith presented to Walter Reed for a selective neck dissection. The History and Physical ("H&P") noted that Mr. Highsmith "[w]as planning

TORS tonsillectomy and right SND but due to robot servicing issues presently, will plan for staged procedures by performing SND as planned on 9/11/2018 with subsequent TOR tonsillectomy at a later date potentially once a robot is available."

33.     In an addendum to the H&P, Dr. Cardoni noted that Mr. Highsmith had selected definitive surgical therapy in the form of TORS right radical tonsillectomy and right modified radical neck dissection.

34.     On September 11, 2018, Mr. Highsmith's neck dissection was performed by Dr. Cardoni and Dr. Yang. During the neck dissection, Mr. Highsmith's internal carotid artery was dissected.

35.     During the neck dissection on September 11, 2018, neither Dr. Cardoni nor Dr. Yang identified that Mr. Highsmith's internal carotid artery had been dissected.

36.     Neither Dr. Cardoni, nor any other physician at Walter Reed, recommended or offered Mr. Highsmith the option of an oncology or radiation oncology consultation prior to his surgery on September 11, 2018.

37.     At no time during the neck dissection on September 11, 2018, did Dr. Cardoni or Dr. Yang request a vascular consultation.

38.     On September 12, 2018, at approximately 4:17, Dr. Cardoni and Dr. Yang wrote a brief operative report describing Mr. Highsmith's direct laryngoscopy and right neck dissection. They noted that there was estimated blood loss (EBL) of 75 ml and 6 specimens were sent to pathology. Nothing in the brief operative report describes the dissection of the internal carotid artery.

39.     While recovering in the postop ward, Mr. Highsmith began developing stroke-like symptoms, such as left facial droop, dysarthria, and right upper extremity weakness. A head CT

was performed to rule out hemorrhagic stroke.

40.    An MRI was performed, which and it showed: (1) Acute infarctions of the right insular cortex and right frontal lobe of a likely embolic etiology; (2) Abnormal signal within the visualized right internal carotid artery consistent with thrombosis, likely secondary to the patient's suspected short segment dissection of the proximal right internal carotid artery.

41.    An MRA also was performed, which was interpreted as showing a short segment dissection within the proximal right internal carotid artery with thrombus formation distally.

42.    The critical findings in the MRI and MRA were identified by the radiologist, Dr. Allen Nawrocki, at 7:00 a.m. on September 12, 2018, and discussed with Dr. Kyle Mikals at 7:05 a.m. on September 12, 2018.

43.    As the discharge summary explained, "Brain MRI and MRA were obtained which demonstrated absent flow distal to the proximal cervical right internal carotid artery which confirmed that it was unfortunately the right internal carotid artery that was ligated intraoperatively."

44.    Mr. Highsmith was treated with aspirin and Lipitor, and was brought to the Intensive Care Unit ("ICU") for neurologic monitoring.

45.    On September 12, 2018, Mr. Highsmith developed acute right neck swelling, concerning for neck hematoma, and was brought back to the operating room for hematoma evacuation, and control of hemorrhage from a branch of the right facial artery.

46.    On September 12, 2018, at approximately 17:25, Dr. Cardoni, Dr. Yang, and Yianne Kritzas, M.D., a resident, wrote a brief operative report describing Mr. Highsmith's second surgery: right neck exploration, evacuation of hematoma, and control of hemorrhage. They noted that intraoperatively it was noted that a branch of the right facial artery was missing a ligation clip,

the surgical site was irrigated, and they secured the branch on the right facial artery. It was noted

that the assistants on the surgery were Dr. George Lee Coppit, Dr. Samantha Mikals, Dr. Nathaniel

Miller, and Dr. Nicholas Novak.

47.     After the September 12, 2018 surgery, Mr. Highsmith was given clinical

recommendations from psychiatry, neurology, social work, physical therapy, occupational

therapy, discharge planner, and the otolaryngology (ENT) team.

48.     While Mr. Highsmith was still at Walter Reed, Dr. Cardoni told Mr. Highsmith and

his family that he had made an error and ligated the right internal carotid artery. Dr. Cardoni was

tearful during this conversation and claimed that the errors were a result of Mr. Highsmith's

anatomy.

49.     During the conversation with Mr. Highsmith and his family, Dr. Cardoni drew a

picture of his surgical error and gave it to Mr. Highsmith.

50.     Dr. Cardoni provided Mr. Highsmith with the Healthcare Resolutions Point of

Contact at Walter Reed.

51.     On September 20, 2018, Mr. Highsmith was finally discharged from Walter Reed.

He was ordered to follow-up with George Lee Coppit, M.D. on September 27, 2018, as it was

noted that Dr. Cardoni was out of the country.

52.     On September 27, 2018, Mr. Highsmith was seen by Dr. Coppit and Forrest D.

Craig, M.D. They noted that Mr. Highsmith's hospital course was complicated by right internal

carotid artery injury and subsequent foci of neurological deficits pertaining to right frontal and

right insular cortices. Dr. Coppit and Dr. Craig also noted that the right internal carotid artery had

been ligated intra-operatively.

53.     As a direct result and proximate cause of the negligent medical care that he received

at Walter Reed, the Claimant, Mr. Highsmith, sustained significant and permanent brain damage and other injuries. Had Mr. Highsmith been properly informed of the treatment options and/or had the surgery been properly performed, he would not have suffered the permanent neurological damage, and its lifelong sequelae.

## COUNT I: MEDICAL NEGLIGENCE

54.     The Claimants hereby incorporate by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs, including each and every factual and legal allegation hereinbefore and hereinafter alleged, and hereby re-adopt and re-allege each such allegation.

55.     At all times relevant and material hereto, the Health Care Provider, the United States of America, and its agents, servants, representatives, and employees, had a duty to diagnose, treat, protect, and provide hospital, medical, and nursing care in accordance with accepted or prevailing standards of care.

56.     Notwithstanding these duties, the Health Care Provider, the United States of America, and its servants, agents, and/or employees, including but not limited to Wayne Cardoni, D.O., Charles Q. Yang, M.D., and the surgical team that participated in Mr. Highsmith's neck dissection on September 11, 2018, were negligent and fell below acceptable standards of care in one or more of the following ways:

> a.   Failing to obtain and/or offer a medical oncology or radiological oncology consultation prior to the neck dissection;
>
> b.   Failing to have proper procedures in place and/or failing to follow proper procedures concerning the performance of surgical procedures, including neck dissections;

c.  Failing to adequately instruct, train, supervise, educate or credential its actual or apparent employees, agents, and/or representatives, including residents and/or fellows, with respect to the performance of surgical procedures, including neck dissections;

d.  Failing to provide appropriately trained and skilled personnel to care for Mr. Highsmith before, during, and after his neck dissection;

e.  Failing to establish, promote, follow, or enforce appropriate chain of command rules, policies, procedures, protocols, or guidelines in response to physicians' acts or omissions that are likely to lead to serious injury or death;

f.  Failing to offer and/or recommend a less substantial and invasive procedure;

g.  Failing to identify anatomical landmarks, including the internal and external carotid arteries during the surgery;

h.  Failing to identify branches of the external carotid artery before ligating the artery;

i.  Ligating the internal carotid artery;

j.  Failing to timely and appropriately recognize that the internal carotid artery was ligated;

k.  Failing to order a vascular consult during the neck dissection;

l.  Closing up and completing the procedure without identifying and recognizing that Mr. Highsmith's internal carotid artery had been severed;

m.  Failing to otherwise perform the neck dissection in accordance with the applicable standard of care;

n.  Failing to timely and properly record all relevant and necessary information

13

concerning the extent and substance of the neck dissection, including the times the care was rendered, and the identity of the persons who were present and providing the care to Mr. Highsmith; and

o. Other negligent acts and/or omissions in the care and treatment of Mr. Highsmith that may be discovered and become known during the course of discovery.

57. At all times mentioned herein and material to this Amended Statement of Claim, the employees, servants, and/or agents of the Health Care Provider, including, but not limited to Wayne Cardoni, D.O., Charles Q. Yang, M.D., and the surgical team that participated in Mr. Highsmith's neck dissection, were negligent and such negligence directly and proximately caused the injuries and damages sustained by the Claimants.

58. Had the Health Care Provider, the United States of America, by and through its actual and/or apparent agents, servants, and/or employees, caring for Mr. Highsmith complied with the applicable standards of care, Mr. Highsmith would have avoided sustaining severe and permanent injuries.

59. As a direct and proximate cause of the individual, joint, consecutive, and concurrent negligent actions and/or omissions of the Health Care Provider, and its agents, servants, and/or employees, including, but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D., the Claimant, Mr. Highsmith, sustained a severed internal carotid artery, stroke, brain damage, and their sequelae. These injuries were a result of inappropriate, substandard, and negligent medical care provided by Wayne Cardoni, D.O., Charles Q. Yang, M.D., and the surgical team that was responsible for performing Mr. Highsmith's neck dissection on September 11, 2018.

60. The anatomical structures should have been easily identified by Dr. Cardoni, Dr.

Yang, and the surgical team, and, as a result of their inappropriate, substandard, and negligent medical care, Mr. Highsmith suffered, and will continue to suffer, severe and permanent brain damage and neurologic injury and its sequelae, including, but not limited to: cognitive and motor dysfunction; speech and language difficulties; pain, suffering, and mental anguish; diminished enjoyment and quality of life; post-traumatic stress disorder; and diminished earning capacity and lost future wages.

61.     As a further direct and proximate cause of the individual, joint, consecutive, and concurrent inappropriate, substandard, and negligent actions and/or omissions by the Health Care Provider, United States of America, and its employees, agents, and/or servants, the Claimant, Mr. Highsmith, has required, and will continue to require, substantial medical, nursing, attendant, and related care; various types of therapies, such as physical, occupational, speech, rehabilitation, psychological, and pharmaceutical therapies; and other attendant care and assistance with the activities of daily living, for all of which significant sums of money have been, and will continue to be, expended.

62.     As a direct and proximate cause of the individual, joint, consecutive, and concurrent negligent actions and/or omissions of the Health Care Provider, the United States of Americna, and its employees, agents, and/or servants, including but not limited to Wayne Cardoni, D.O., Charles Q. Yang, M.D., and the surgical team at Walter Reed, and the resulting injuries sustained by Mr. Highsmith, the Claimant, Sheila Highsmith, has, and will continue to, suffer mental pain, emotional anguish, and a loss of Mr. Highsmith's services, companionship, and consortium.

## COUNT II: LACK OF INFORMED CONSENT

63.     The Claimants hereby incorporate by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs, including each and every

15

factual and legal allegation hereinbefore and hereinafter alleged, and hereby re-adopt and re-allege each such allegation.

64.     Upon submitting to the medical care and treatment of the Health Care Providers herein, Mr. Highsmith reasonably relied upon the expertise of the Health Care Providers, who had a duty to explain the treatment to the Claimant and to advise of any material risks, benefits, and alternatives of the treatment so that the Claimant could make an intelligent and informed decision about whether or not to go forward with the proposed treatment.

65.     The Health Care Providers failed to adequately and fully inform the Claimant, Mr. Highsmith, about the treatment and to advise him of any material risks, benefits, and alternatives of the treatment so that he could make an intelligent and informed decision.

66.     The Health Care Provider also failed to adequately inform Mr. Highsmith of the available alternative treatments, including, but not limited to, oncology consultations, radiation therapy as an initial treatment, and/or less extensive and invasive surgical procedures.

67.     After Mr. Highsmith elected to proceed with a selective (or limited) neck dissection, the Health Care Providers, on their own accord, performed a much more extensive and aggressive modified radical neck dissection.

68.     The Health Care Providers failed to obtain informed consent from the Claimant prior to undertaking to perform the medical procedures and surgery that he underwent on September 11, 2018.

69.     The Health Care Provider, the United States of America, acting through its agents, servants, and/or employees, including, but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D. was negligent and fell below acceptable standards of care in one or more of the following ways:

a. Failed to obtain the Claimant's informed consent relative to the medical treatment that was offered and recommended;

b. Failed to obtain the Claimant's informed consent for the procedure that was actually performed during the surgery;

c. Failed to disclose to the Claimant the alternatives to, and the reasonably foreseeable risks and benefits of, the medical treatment that was recommended and performed, as reasonable medical practitioners under the same or similar circumstances would have disclosed, in a manner permitting the Claimant to make a knowledgeable and prudent decision and evaluation; and

d. Failed to disclose the risks and hazards of the medical treatment recommended and performed in a timely and appropriate manner that would have permitted the Claimant to make a knowledgeable and prudent decision regarding the medical treatment that was recommended and performed.

70.     Had the Health Care Provider, the United States of America, disclosed the alternatives to, and the risks, hazards and benefits of, the medical treatment recommended and performed, the Claimant, as a reasonable person, would not have consented to the surgical procedure and would have opted to first obtain an oncology consultation and to consider non-surgical radiation therapy.

71.     The failure of Health Care Provider, the United States of America, and its agents, servants, and/or employees to obtain an informed consent to the procedures and surgery that was performed, was a direct and proximate cause of the injuries, harms, and losses sustained by the Claimants.

72.     As a direct and proximate cause of the individual, joint, consecutive, and concurrent

17

negligent actions and/or omissions of the Health Care Provider, and its agents, servants, and/or employees, including, but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D., the Claimant, Mr. Highsmith, sustained a severed internal carotid artery, stroke, brain damage, and their sequelae. These injuries were a result of inappropriate, substandard, and negligent medical care, and a lack of informed consent.

73.     As a result of inappropriate, substandard, and negligent medical care, and a lack of informed consent, Mr. Highsmith suffered, and will continue to suffer, severe and permanent brain damage and neurologic injury and its sequelae, including, but not limited to: radical neck dissection and follow-up surgeries; neurologic injuries; cognitive and motor dysfunction; speech and language difficulties; pain, suffering, and mental anguish; diminished enjoyment and quality of life; post-traumatic stress disorder; and diminished earning capacity and lost future wages.

74.     As a further direct and proximate cause of the individual, joint, consecutive, and concurrent inappropriate, substandard, and negligent actions and/or omissions and a lack of informed consent by the Health Care Provider, the United States of America, and its employees, agents, and/or servants, the Claimant, Mr. Highsmith, has required, and will continue to require, substantial medical, nursing, attendant, and related care; various types of therapies, such as physical, occupational, speech, rehabilitation, psychological, and pharmaceutical therapies; and other attendant care and assistance with the activities of daily living, for all of which significant sums of money have been, and will continue to be, expended.

75.     As a direct and proximate cause of the individual, joint, consecutive, and concurrent negligent actions and/or omissions and lack of informed consent by the Health Care Provider, the United States of America, and its employees, agents, and/or servants, including but not limited to Wayne Cardoni, D.O. and Charles Q. Yang, M.D., and the resulting injuries sustained by Mr.

Highsmith, the Claimant, Sheila Highsmith, has suffered, and will continue to suffer, mental pain, emotional anguish, and a loss of Mr. Highsmith's services, companionship, and consortium.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Claimants, Charles Highsmith and Sheila Highsmith, respectfully pray that this case proceed to trial, and that the Claimants recover a judgment against the Health Care Provider, the United States of America, and an award in their favor for actual damages in an amount in excess of THIRTY THOUSAND DOLLARS ($30,000.00) for their economic and non-economic injuries, harms, and losses, pre- and post-judgment interest, costs and expenses, attorney's fees, and all other and further relief and damages to which the Claimants may be justly and properly entitled.

Dated this 13th day of October 2020,

Respectfully submitted,

_____

Dov Apfel (CPF # 7911010009)
dapfel@jjsjustice.com
Seth L. Cardeli (CPF # 1406130001)
scardeli@jjsjustice.com
JANET, JANET & SUGGS, LLC
4 Reservoir Circle, Suite 200
Baltimore, Maryland 21208
Telephone: 410-653-3200
Facsimile: 410-653-9030
*Attorneys for Claimants*

## CERTIFICATE OF MERIT

1. I, James A. Salata, M.D., am a licensed physician and am Board Certified in Otolaryngology, the same specialty in which Health Care Provider Wayne Cardoni, D.O. is board certified and in which Health Care Providers, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., individually, Walter Reed National Military Medical Center, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D. and/or United States of America, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., were engaged that gave rise to this claim. I am familiar on a daily basis with the general aspects of Otolaryngology. I have regularly participated in the management and treatment of Otolaryngology patients and have special education, training and experience in the evaluation, diagnosis, care, and treatment of patients with head and neck cancer. Additionally, I have routinely worked as an Otolaryngologist collaborating with and supervising other physicians and residents, nurses, and technicians for about 27 years, and am qualified to render opinions as to whether the surgeons, residents, technicians, and nursing staff complied with or deviated from the applicable standard of care.

2. I have clinical experience and have provided consultation relating to the clinical practice in the area of Otolaryngology, the same specialty in which Health Care Provider Wayne Cardoni, D.O. is board certified and in which Health Care Providers, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., individually, and/or Walter Reed National Military Medical Center, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and

Charles Q. Yang, M.D. and/or United States of America, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., were engaged, within five years of the date of the acts and omissions giving rise to this cause of action.

3.    Based upon my education, training and experience, and my review of the pertinent medical records pertaining to this claim, it is my opinion to a reasonable degree of medical probability that the care and treatment of Charles Highsmith rendered by Health Care Provider Wayne Cardoni, D.O. is board certified and in which Health Care Providers, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., individually, and/or Walter Reed National Military Medical Center, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D. and/or United States of America, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., breached the applicable standard of care in the following ways: failing to offer and/or obtain a medical oncology and/or radiological oncology consultation prior to the neck dissection; failing to properly inform Mr. Highsmith of the available treatment options and the risks and benefits of each treatment option; performing a modified radical neck dissection when the patient had opted for a selective neck dissection; failing to properly identify the external carotid artery and internal carotid artery; negligently ligating the internal carotid artery; failing to timely and appropriately identify that the internal carotid artery had been severed; failing to intraoperatively request a vascular consult; negligently closing up and ending the surgery without recognizing that the internal carotid artery was cut; and otherwise failing to appropriately perform Mr. Highsmith's neck dissection.

2

In my opinion, the standard of care for a patient such as Charles Highsmith required any reasonable Health Care Provider, practicing in the same or similar field and under the same or similar circumstances as Health Care Providers, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., individually, and/or Walter Reed National Military Medical Center, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D. and/or United States of America, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., to select appropriate plans of care for patients; obtain medical oncology and/or radiological oncology consultations; inform patients of the available treatment options and the risks and benefits of each treatment option; to perform the procedure that the patient actually authorizes; to properly identify anatomical structures, including but not limited to the external carotid artery and internal carotid artery; to not ligate the internal carotid artery; to timely and appropriately identify that the wrong anatomical structure has been damaged; to request all necessary and appropriate intraoperative and post-operative consults; to not close up and end a surgery without recognizing and treating any damaged structures; and otherwise to appropriately and carefully perform a neck dissection so as to not damage the internal carotid artery.

Had Health Care Providers, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., individually, and/or Walter Reed National Military Medical Center, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D. and/or United States of America, directly and as the actual and/or apparent principal, master, and/or

employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., complied with the applicable standard of care, it is my opinion to a reasonable degree of medical probability that Charles Highsmith would have avoided all surgical procedures that he underwent and/or would have not suffered irreversible injury, ligation of his internal carotid artery, hemorrhage, stroke, brain damage, neurological injuries, cognitive and motor dysfunction, speech and language difficulties, pain, suffering, and mental anguish, diminished enjoyment and quality of life, diminished earning capacity, and other sequelae.

Additionally, it is my opinion to a reasonable degree of medical probability that had Health Care Providers, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., individually, and/or Walter Reed National Military Medical Center, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D. and/or United States of America, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., complied with the applicable standard of care, Charles Highsmith's severe, painful, permanent and disabling injuries and related sequelae would have been avoided.

Additionally, it is my opinion to a reasonable degree of medical probability that had Health Care Providers, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., individually, Walter Reed National Military Medical Center, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D. and/or United States of America, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses,

4

and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., complied with the applicable standard of care, Plaintiff Sheila Highsmith would not have suffered deprivation of an emotional relationship with her husband, mental pain and anguish, and a loss of Mr. Highsmith's services, companionship, and consortium.

4.     Attached is a brief report of my opinions, which is incorporated herein by reference. I reserve the right to alter, amend, modify, expand upon or to otherwise revise my opinions as discovery progresses and new or additional information becomes available to me.

5.     I do not annually devote more than 20% of my professional activities to activities that directly involve testimony in personal injury claims.

6.     I hereby certify and affirm that the above is accurate and true and correct to the best of my ability and based upon my personal knowledge.

James A. Salata, M.D.

5

## INFORMATION REPORT OF JAMES A. SALATA, M.D.

I have reviewed the pertinent medical records of Charles Highsmith (hereinafter referred to as "Mr. Highsmith"). My opinions contained in my Certificate of Merit are hereby incorporated by reference. I intend to render opinions in the areas of otolaryngology standards of care applicable to physicians, residents, nurses, and/or technicians managing otolaryngology patients, causation, and damages. Upon concluding my review, it is my opinion to a reasonable degree of medical probability that the Health Care Providers, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., individually, Walter Reed National Military Medical Center, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D. and/or United States of America, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., (hereinafter collectively referred to as the "Health Care Providers"), deviated from the applicable standards of care by negligently failing to provide informed consent to Mr. Highsmith and by negligently performing Mr. Highsmith's neck dissection on September 11, 2018. It is further my opinion to a reasonable degree of medical probability that the breaches in the standard of care by the Health Care Providers directly and proximately caused Mr. Highsmith to suffer severe, painful, permanent, and disabling injuries, including, but not limited to ligation of his internal carotid artery, hemorrhage, stroke, brain damage, neurological injuries, cognitive and motor dysfunction, speech and language difficulties, pain, suffering, and mental anguish, diminished enjoyment and quality of life, diminished earning capacity, and other sequelae.

1

My review of the records revealed that on May 23, 2018, Mr. Highsmith was seen by an Otolaryngologist (ENT), Dr. Pryor Brenner, at Malcolm Grow Medical Clinics and Surgery at Center at Joint Base Andrews. Dr. Brenner noted that Mr. Highsmith had a right neck mass for approximately 7-10 days. He noted that Mr. Highsmith had been seen at an out-of-state urgent care center and the ER at Ft. Belvoir Community Hospital where he received a neck CT. After concluding that the neck mass was most likely an infectious process, Dr. Brenner performed an incision and drainage (I&D) of the mass and ordered antibiotics.

On May 30, 2018, Mr. Highsmith was seen again by Dr. Brenner for a follow-up visit. The cultures and gram stain from the incision and drainage were noted to be negative. It was noted that Mr. Highsmith had no fevers, swallowing, or voice problems, and was taking the antibiotics as instructed.

On June 16, 2018, Mr. Highsmith returned to Dr. Brenner complaining of continued pain and fullness from the right neck mass. It was noted by Dr. Brenner that there had been no improvement from the long course of antibiotics.

On July 20, 2018, Dr. Brenner performed an excisional right neck biopsy of the mass.

On July 27, 2018, Mr. Highsmith went to Dr. Brenner for a post-operative visit and wound check. The preliminary pathology report was noted to be very concerning for a malignant process. Dr. Brenner ordered a PET Whole Body Survey.

On August 2, 2018, Mr. Highsmith had the PET Whole Body Survey performed at Walter Reed. According to the Impressions in the Report, the PET found (1) asymmetric base of tongue activity which may represent primary malignancy, asymmetric lymphoid activity, or postsurgical changes; and (2) small focus of hypermetabolic activity at the region of right cervical level II with

2

adjacent lymph nodes but no definite anatomic correlate. It was noted that this may represent brown fat activity, malignant hyper metabolism from the adjacent node, or postsurgical changes.

On August 8, 2018, Dr. Brenner noted that the PET/CT showed a concerning increased uptake in the right base of tongue with post-surgical changes in the right neck level II/III. He also noted that the final pathology results returned a diagnosis of metastatic keratinizing SCCA (squamous cell carcinoma) that was strongly positive for p16 and negative for EBV (Epstein Barr virus). Dr. Brenner wrote that the patient was pending an MRI of his neck and that he was sending him to be seen by the Bethesda Head and Neck ("H&N") team.

Thereafter, it appears that Mr. Highsmith was seen by Dr. Cardoni and a resident, Phoebe E. Riley, M.D., on August 22, 2018, but there is minimal contemporaneous charting. An e-mail from Dr. Brenner is quoted in the medical record by Andre P. Shepherd: "50 M with new SCCA who needs to be scheduled with ENT, medonc, and radioneprior [sic] to presentation to H-T-N TB. Please schedule within the next 2 weeks. See ALTHA notes for more details. Thanks. Dr. Brenner 3015260045."

On August 26, 2018, Dr. Cardoni noted in the August 22, 2018 entry, that he had seen Mr. Highsmith. Dr. Cardoni noted that while the PET/CT report suggests the right tongue base as the primary site, the right tonsil is enlarged and firm and it is more likely the source. He also noted that the base of the tongue is soft and displays no mass on exam. Dr. Cardoni scheduled the patient for an exam under anesthesia and biopsy, and noted that if the primary is the right tonsil, Mr. Highsmith would be an excellent candidate for TORS radical tonsillectomy.

It is noted that there were several phone calls on September 6th and 7th by a nurse consultant, Ebony Y. Stewart, attempting to get Mr. Highsmith to come for a pre-operative visit on September

3

10th and the surgery on September 11th. After several calls, Mr. Highsmith agreed to the proposed schedule.

On September 10, 2018, Mr. Highsmith was seen by Dr. Cardoni and Charles Q. Yang, M.D. ("Dr. Yang"), a resident. Dr. Yang noted that Mr. Highsmith consented to a right Selective Neck Dissection ("SND") only, and that the TORS tonsillectomy would take place at a later time. The contemporaneous records do not reflect that Mr. Highsmith was offered a medical oncology or radiological oncology consultation prior to the surgery.

In an addendum to the September 10th note, on September 12, 2018, at 3:48 a.m., Dr. Cardoni wrote that for the first time that the patient understands that treatment per NCCN guidelines may be either definitive radiotherapy or definitive surgery. He also noted that the patient understands that the advantage of surgery is complete tumor removal, more accurate staging, and the potential avoidance of radiotherapy if adverse risk factors are found to be absent. Dr. Cardoni noted that Mr. Highsmith expressed a desire to avoid radiotherapy and preferred a surgical approach.

On September 11, 2018, Mr. Highsmith presented to Walter Reed for the surgical procedure by Dr. Cardoni and Dr. Yang. In the Operative Report signed by Dr. Cardoni and Dr. Yang they describe the steps taken during the surgery. The report states that: "Posteriorly dissecting to find the floor of the neck resulted in an inadvertent injury to the external carotid artery which was divided and bleeding was controlled with clips and suture ligature." There is no indication in the operative report that either Dr. Cardoni or Dr. Yang recognized that they had ligated the internal carotid artery.

After the surgery, while Mr. Highsmith was recovering in the postop ward, it was noted that he developed stroke-like symptoms such as left facial droop, dysarthria, and right upper

4

extremity weakness. A head CT scan was performed that ruled out hemorrhagic stroke. Brain MRI and MRA were noted to demonstrate absent flow distal to the proximal cervical right internal carotid artery, "which confirmed that it was unfortunately the right internal carotid artery that was ligated intraoperatively." Mr. Highsmith was started on aspirin and Lipitor and brought to the ICU for neurologic monitoring.

On September 12, 2018, Mr. Highsmith was noted to develop acute right neck swelling concerning for neck hematoma. He was taken to the OR for hematoma evacuation and control of the hemorrhage from a branch of right facial artery. During the procedure it was noted by Dr. Cardoni and Dr. Yang that a branch of the right facial artery was missing a ligation clip. It is noted that Dr. Cardoni and Dr. Yang were assisted in this procedure by Dr. George L. Coppit ("Dr. Coppit"), Dr. Samantha Mikals, Dr. Nathaniel Miller, Nicholas Novak, and Yianne Kiritzas, M.D.

A pathology report on September 14, 2018, by Dr. Bradley Elliot Jones noted that all eight (8) lymph nodes were negative for malignancy. He also noted that there was a foreign body giant cell chronic inflammatory reaction with polarizable foreign material.

On September 20, 2018, Mr. Highsmith was finally discharged from Walter Reed.

On September 27, 2018, Mr. Highsmith was seen by Dr. Coppit and Dr. Forrest Craig, who noted that he was still suffering from left sided arm and leg weakness and was requiring a cane for stability.

On September 28, 2018, Dr. Coppit noted that the final pathology from the neck dissection revealed that none of the 32 nodes tested positive for metastatic disease.

It is my opinion to a reasonable degree of medical probability that the standard of care required the Health Care Providers, Health Care Providers, Wayne Cardoni, D.O. and Charles Q.

5

Yang, M.D., individually, Walter Reed National Military Medical Center, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D. and/or United States of America, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., to: (a) obtain and/or offer a medical oncology or radiological oncology consultation prior to the neck dissection; (b) provide informed consent to Mr. Highsmith about all reasonable treatment options, including information about the risks and benefits of those treatments; (c) provide appropriately trained and skilled personnel to care for Mr. Highsmith before, during, and after his neck dissection; (d) provide appropriate supervision over the personnel performing and/or assisting with the neck dissection; (e) identify anatomical landmarks during the neck dissection, including the internal and external carotid arteries; (f) avoid ligating the internal carotid artery during the neck dissection; (g) timely and appropriately recognize that the internal carotid artery was ligated; (h) order a vascular consult intraoperatively; and (i) avoid closing up and completing the neck dissection without recognizing that the internal carotid artery was ligated.

It is further my opinion to a reasonable degree of medical probability that Health Care Providers, Health Care Providers, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., individually, Walter Reed National Military Medical Center, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D. and/or United States of America, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and

6

Charles Q. Yang, M.D., in violation of the standard of care, negligently: (a) failed to obtain and/or offer a medical oncology or radiological oncology consultation prior to the neck dissection; (b) failed to provide informed consent to Mr. Highsmith about all reasonable treatment options, including information about the risks and benefits of those treatments; (c) failed to provide appropriately trained and skilled personnel to care for Mr. Highsmith before, during, and after his neck dissection; (d) failed to supervise the personnel performing and/or assisting with the neck dissection; (e) failed to identify anatomical landmarks during the neck dissection, including the internal and external carotid arteries; (f) negligently ligating the internal carotid artery during the neck dissection; (g) failing to timely and appropriately recognize that the internal carotid artery was ligated; (h) failing to order a vascular consult intraoperatively; and (i) closing up and completing the neck dissection without recognizing that the internal carotid artery was ligated.

It is my opinion to a reasonable degree of medical probability that had the Health Care Providers, Health Care Providers, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., individually, Walter Reed National Military Medical Center, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D. and/or United States of America, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., complied with the standard of care, Mr. Highsmith would not have sustained severe, painful, permanent, and disabling injury, including, but not limited to ligation of his internal carotid artery, hemorrhage, stroke, brain damage, neurological injuries, cognitive and motor dysfunction, speech and language difficulties, pain, suffering, and mental anguish, diminished enjoyment and quality of life, diminished earning capacity, and other sequelae.

7

Additionally, it is my opinion to a reasonable degree of medical probability that had Health Care Providers, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., individually, Walter Reed National Military Medical Center, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D. and/or United States of America, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., complied with the applicable standard of care, Plaintiff Sheila Highsmith would not have suffered deprivation of an emotional relationship with her husband, mental pain and anguish, and a loss of Mr. Highsmith's services, companionship, and consortium.

Therefore, it is my opinion to a reasonable degree of medical probability that Health Care Providers, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., individually, Walter Reed National Military Medical Center, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D. and/or United States of America, directly and as the actual and/or apparent principal, master, and/or employer of physicians, residents, nurses, and/or technicians, including, but not limited to, Wayne Cardoni, D.O. and Charles Q. Yang, M.D., breaches in the standard of care as discussed herein and in my Certificate of Merit, directly and proximately caused Mr. Highsmith to suffer an irreversible injury, ligation of his internal carotid artery, hemorrhage, stroke, brain damage, neurological injuries, cognitive and motor dysfunction, speech and language difficulties, pain, suffering, and mental anguish, diminished enjoyment and quality of life, diminished earning capacity, and other sequelae. Health Care Providers further directly and proximately caused Mr. Highsmith's wife, Sheila Highsmith, to suffer deprivation of

8

an emotional relationship with her husband, mental pain and anguish, and a loss of Mr. Highsmith's services, companionship, and consortium.

This report is not, nor is it intended to be, an exhaustive description of all opinions and conclusions, and their bases. My opinion regarding the standard of care and the proximate causation of the injuries, and damages may be modified and/or supplemented upon review of additional information and/or documents.

I further certify that I have had clinical experience, provided consultation relating to clinical practice, and/or taught medicine in the field of Otolaryngology or a related field of health care within five (5) years of the date of the above-initiated acts or omissions giving rise to this claim. I further certify that I am Board Certified in Otolaryngology. I also have clinical experience counseling patients with head and neck cancer and performing neck dissections and related health care in hospital settings. I also have clinical experience working in consultation with and performing surgeries with other physicians and/or residents.

Further, I do not devote more than 20% annually of my professional time on activities that directly involve testimony in personal injury cases.

James A. Salata, M.D.

9

| | |
|---|---|
| CHARLES HIGHSMITH<br>3047 Desert Palm Ct<br>Dumfries, VA 22026 | *  **IN THE** |
| | *  **HEALTH CARE** |
| and | *  **ALTERNATIVE DISPUTE** |
| | *  **RESOLUTION OFFICE** |
| SHEILA HIGHSMITH<br>3047 Desert Palm Ct<br>Dumfries, VA 22026 | * |
| CLAIMANTS | *   HCADRO No.: _____ |
| v. | * |
| UNITED STATES OF AMERICA | * |
| Serve On:   United States Attorney for the<br>District of Maryland<br>36 S. Charles Street, 4th Fl.<br>Baltimore, MD 21201 | *<br><br>* |
| | * |
| Serve On:   William Barr<br>ATTN: Civil Division<br>U.S. Attorney General's Office,<br>950 Pennsylvania Ave, N.W.,<br>Washington, D.C. 20530-00001 | *<br><br>*<br><br>* |
| HEALTH CARE PROVIDERS. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>ELECTION TO WAIVE ARBITRATION</u>

Claimants, Charles Highsmith and Sheila Highsmith, by and through their attorneys, Dov Apfel, Seth L. Cardeli, and Janet, Janet & Suggs, LLC, pursuant to MD. CODE ANN., CTS. & JUD. PROC. 3-2A-06B, hereby waives the arbitration of this above captioned claim.

[LEFT INTENTIONALLY BLANK]

Respectfully submitted,

Dov Apfel
dapfel@jjsjustice.com
Seth L. Cardeli
scardeli@jjsjustice.com
JANET, JANET & SUGGS, LLC
4 Reservoir Circle, Suite 200
Baltimore, Maryland 21208
Telephone: 410-653-3200
Facsimile: 410-653-9030
*Attorneys for Claimants*