IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHARLES HIGHSMITH, et al.,** | * | |
| | * | |
| **Plaintiffs.** | * | |
| | * | Case No. 8:20-cv-03249-TDC |
| **v.** | * | |
| **UNITED STATES OF AMERICA,** | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST TO FILE A MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 35**

**I.     INTRODUCTION**

Plaintiffs Charles Highsmith and Sheila Highsmith, by and through their attorneys, Levin & Perconti, hereby respond to Defendants' request to file a motion pursuant to Fed. R. Civ. P. 35, requesting Plaintiff Charles Highsmith to submit to an examination by Defendants' vocational rehabilitation expert. Defendants' request should be denied because the examination they seek is not a mental or physical examination permitted by Fed. R. Civ. P. 35.

**II.    BACKGROUND**

This is a medical malpractice action brought by Plaintiffs Charles and Sheila Highsmith arising from the medical care provided to Charles Highsmith by Wayne Cardoni, D.O., and Charles Q. Yang, M.D., at Walter Reed National Military Medical Center. During a neck dissection on September 11, 2018, Charles Highsmith's internal carotid artery was dissected resulting in severe injuries including a stroke and permanent brain damage.

1

Prior to the surgery, Charles Highsmith was a highly functional individual who had succeeded in life both personally and professionally. At the time of Defendants' negligence, Charles was employed as an anti-terrorism analyst at the Pentagon. While Charles is still currently employed at the Pentagon, neuropsychological testing has shown that Charles is working at a severely diminished cognitive level. Additionally, he is now suffering from depression and PTSD as a result of the stroke and brain injury. Charles testified that as a result of his post-stroke condition, he will be forced to retire at an earlier date. Plaintiffs have provided Defendants with an economic report that sets forth what Charles' lost wages will be if he is forced to retire early consistent with his testimony. However, Plaintiffs have not disclosed experts opining that Charles cannot work today. It is not in dispute that Charles is still working to this day. For that reason, Plaintiffs did not disclose a vocational expert to testify to Charles' current inability to work.

Now Defendants seek an order requiring Charles to submit to an examination by Defendants' vocational rehabilitation expert, Dr. Joseph Rose. Defendants' request is without good cause and otherwise not the type of examination allowed under Federal Rule of Civil Procedure 35. Such an examination should not be permitted.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 35 permits a court to order a party whose mental or physical condition is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. Fed. R. Civ. P. 35. Good cause requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere. *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). While courts have held that a party in a negligence action who puts his physical or mental condition in controversy provides a Rule 35 movant with good cause, the consideration does not stop there. *Schlagenhauf*, 379 U.S. at 118-

119. The ability of the movant to obtain the information by other means is also relevant to the good cause determination. *Merce v. Greenwood*, No. 2:04-cv-00610, 2006 WL 8459326, *3, (D. Utah Mar. 28, 2006).

Courts have found defendants do not demonstrate good cause where the information is available by other means. *See e.g., Storms v. Lowe's Home Centers, Inc.,* 211 F.R.D. 296 (W.D.Va.2002); *In re: Falcon Workover Co., Inc.,* 186 F.R.D 352 (E.D.La.1999). The mere "need" for an examination does not translate into "good cause." *Guilford Natl. Bank of Greensboro v. Southern Ry. Co.*, 297 F.2d 921,924 (4th Cir.1962). "In the context of a vocational expert, there is often no need for an "examination" particularly when the moving party is allowed access to all of the claimant's medical records, has the opportunity to depose the claimant, and is provided with the results of the tests performed by claimant's vocational expert." *In re Falcon Workover, Co., Inc.*, 186 F.R.D 352, 353-54 (E.D. La.1999) (citing *Acosta v. Tenneco Oil Co.*, 913 F.2d 205, 209 (5th Cir.1990)). Also relevant to the good cause determination is whether one party's expert bases his or her conclusions on personal observations of the claimant while the other party's expert is not afforded the same opportunity. *Wilks v. Epic Marine, LLC*, 2003 WL 22272191, at *2, (E.D.La.2003). Courts have interpreted one of the rationales behind Rule 35 is to place the parties on somewhat equal footing. *Merce v. Greenwood*, No. 2:04-cv-00610, 2006 WL 8459326, *3, (D. Utah Mar. 28, 2006); *See also Tomlin v. Holecek*, 150 F.R.D. 628, 632 (D.Minn.1993) (citing *Looney v. Nat'l R.R. Passenger Corp.*, 142 F.R.D 264, 265 (D. Mass.1992)).

In *Storms v. Lowe's Home Centers, Inc.*, the movant sought an order compelling plaintiff to submit to a Rule 35 exam to test the opinions of plaintiff's vocational expert who had alleged that the claimed injury rendered plaintiff unable to return to his pre-injury employment. *Storms v. Lowe's Home Centers, Inc.,* 211 F.R.D. 296 (W.D.Va.2002). Defendant claimed the language of

Rule 35 covered vocational exams and because plaintiff placed his vocational capacity in controversy, defendants vocational expert should be permitted to interview the plaintiff. *Id.* at 297. The Western District of Virginia disagreed. The court would not consider the vocational assessment a physical or mental examination under Rule 35. *Id.* at 298. Rationale for the decision was found in the 1991 Advisory Committee Notes to Rule 35. The court recognized that while the Advisory Committee Notes extended the scope of Rule 35 as it pertains to *examiners* covered under the rule, it did not similarly expand the scope of *examinations* covered. *Id*. (emphasis added). A standard vocational assessment, like the exam requested here, was not connected with any physical or mental examination and therefore would not be ordered by the court. *Id*.

**IV.   ARGUMENT**

Defendants do not show good cause by claiming that Charles' claimed disability appears to be contradicted by his continued employment. The interview Defendants request is not directed at Charles' physical or mental condition, but rather his fitness for alternative employment. Rule 35 does not allow the Court to order an interview for this purpose. Second, Rule 35 requires that the examination be conducted by a suitably licensed or certified examiner. Dr. Joseph Rose is not licensed or certified to perform any type of physical or mental examination contemplated by the rule. For the reasons proffered below, Defendants' request should be denied.

Good cause not only requires a showing of specific facts that demonstrate the need for the information sought, but requires a showing of the inability to obtain the information otherwise. Charles Highsmith sat for an eleven-hour deposition over the course of two days. Plaintiffs have fulfilled three sets of production requests from Defendants and seven sets of interrogatories answered by Charles Highsmith. Plaintiffs have promptly signed countless authorizations for medical records requested by Defendants. Plaintiffs have produced all of Charles' tax records and

4

earnings statements for the last ten years. Plaintiffs provided an extensive medical history, employment history, and education history of Charles separate and in addition to the questions asked during his deposition. Defendants deposed Charles' wife, Sheila Highsmith, and three of the Highsmith's adult children. All of these individuals sat for extensive questioning regarding their observations of Charles and his day-to-day life, including his employment history. Further, on May 26, 2022, Charles submitted to an exam by Defendants' neurologist expert, Dr. Mark Baker. Plaintiffs promptly agreed to Dr. Baker's exam as the request was within the parameters of Rule 35. Plaintiffs agreed to the first Rule 35 exam without knowing a second exam would be requested shortly thereafter.

The parties have engaged in a year and a half of active discovery in this case. Plaintiffs have provided Defendants with a copy of all medical records, employment records, tax records, and all other discoverable material requested by Defendants. Plaintiffs made Charles and his family available for depositions at which time counsel was able to examine Charles and his family on all matters relating to his functional capacity. Defendants' vocational rehabilitation expert has a plethora of information at his disposal to conduct an assessment without the necessity of what would amount to an additional, unsupervised deposition.

In addition to a showing of good cause, Rule 35 requires the examiner to be suitably licensed or certified to conduct a mental or physical exam. Defendants' vocational rehabilitation expert is not suitably licensed or certified to conduct a mental or physical examination. Dr. Rose is not a medical doctor, psychiatrist, or a licensed psychologist. He possesses no medical, scientific, psychiatric, or other psychological clinical training. While Dr. Rose may be qualified in his field of vocational rehabilitation, he is not qualified to perform any type of physical or mental examination. Defendants hired Dr. Rose to gather information regarding Charles' employment

history, education, and family background in order to form an opinion as to whether there are alternative employment positions Charles could hold. The solicitation of such information already occurred during the discovery phase of this case. Defendants are already in possession of the information that Dr. Rose intends to elicit from Charles. Charles' deposition was taken by defense counsel at which time counsel had a full and complete opportunity to obtain all the information needed for their vocational rehabilitation expert to conduct his evaluation and render a report.

Defendants cannot claim that Dr. Rose needs Plaintiff to supply additional essential information for him to conduct his own assessment. Defendants seek a Rule 35 exam simply based on the fact that Charles put his vocational capacity at issue. The court was not persuaded by this argument in *Storms v. Lowe's Home Centers, Inc.* The vocational assessment requested here is nearly identical to that requested in *Storms* in which the court refused to recognize the vocational assessment as connected to any physical or mental examination. While the 1991 Advisory Committee Notes extended the scope of examiners permitted to conduct Rule 35 exams, the scope of the exams themselves remains the same. Defendants should not now be permitted to reach beyond the scope under the guise of a Rule 35 exam.

One of the goals of Rule 35 is to avoid prejudice by placing the parties on somewhat equal footing. This is not a situation where Plaintiff retained a vocational rehabilitation expert who reached conclusions about Charles' inability to work based on an in-depth clinical interview for which Defendants' expert was not present. Plaintiffs have not disclosed a vocational rehabilitation expert to testify to Charles' inability to work. Defendants do not need Dr. Rose to conduct an unsupervised exam of Charles to procure the same information obtained during discovery. Instead, Dr. Rose can adequately assess and scrutinize Charles' functional abilities by review of the hours

of videotaped deposition testimony, interrogatories, production requests, and the Rule 35 exam performed by Defendants' neurologist expert Dr. Baker.

## V. CONCLUSION

The vocational assessment sought by Defendants is not a physical or mental examination under Rule 35 and Defendants have not shown the good cause required for a Rule 35 examination of Charles by its vocational expert. For the foregoing reasons, Defendants' request to file a motion ordering an examination by Defendants' vocational rehabilitation expert should be denied.

Dated: July 8, 2022　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　/s/ *Seth Cardeli*
　　　　　　　　　　　　　　　　　　　　　Seth L. Cardeli (#07212)
　　　　　　　　　　　　　　　　　　　　　slc@levinperconti.com
　　　　　　　　　　　　　　　　　　　　　Abby Marshall (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　amm@levinperconti.com
　　　　　　　　　　　　　　　　　　　　　Levin & Perconti
　　　　　　　　　　　　　　　　　　　　　325 North LaSalle Drive
　　　　　　　　　　　　　　　　　　　　　Suite 300
　　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60654
　　　　　　　　　　　　　　　　　　　　　Telephone: (312) 332-2872
　　　　　　　　　　　　　　　　　　　　　Facsimile: (312) 332-3112
　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*