IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **CHARLES HIGHSMITH, *et al.*,** | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | 8:20-cv-03249-TDC-TJS |
| | * | |
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Defendant. | * | |

**\*\*\*\*\*\*\*\*\*\***

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO COMPEL A RULE 35 EXAMINATION**

**I.     INTRODUCTION**

Pursuant to Fed. R. Civ. P. 35 and Judge Sullivan's Order, ECF No. 38, defendant United States hereby submits this reply in support of its Motion for a Rule 35 Examination of Charles Highsmith.  In plaintiffs' Opposition they claim that prior to his surgery, Mr. Highsmith succeeded professionally. *See* ECF No. 41 ("Opp'n") p. 2.  However, it is undisputed that he has continued to succeed professionally in the nearly four years since his surgery. In fact, not only has Mr. Highsmith continued to be employed in his same position as an anti-terrorism analyst at the Pentagon, but he has received salary increases and bonuses since his surgery. Despite his success, in this lawsuit Mr. Highsmith is claiming millions of dollars in lost future wages based on the speculative assertion that due to his injuries he might have to retire in the next year. Plaintiffs' Opposition even acknowledges the speculative nature of Mr. Highsmith's lost wages claim. *See* Opp'n p. 2 ("Plaintiffs have provided Defendants with an economic report that sets forth what Charles' lost wages will be *if* he is forced to retire early . . . . It is not in dispute that Charles is still working to this day.") (emphasis added).  Clearly the United States is entitled,

1

pursuant to Rule 35, to an examination which will probe the basis for Mr. Highsmith's assertion that he may somehow be forced to retire early. Rule 35 is "'to be accorded a broad and liberal treatment,' to effectuate [the civil procedure rules'] purpose that 'civil trials in the federal courts no longer need be carried on in the dark.'" *Schlagenhauf v. Holder*, 379 U.S. 104, 14–15 (1964) (quoting *Hickman v. Taylor*, 329 U.S. 495, 501, 507 (1947).

In seeking to avoid a Rule 35 examination of Charles Highsmith, Plaintiffs' opposition asserts three arguments: (1) vocational examinations are not mental or physical examinations pursuant to Rule 35; (2) vocational rehabilitation counselors are not suitably licensed or certified to perform Rule 35 examinations; and (3) the United States has not shown good cause for this Court to order a Rule 35 exam. Each of these arguments is unavailing and the Court should grant the United States' motion.

## II.   ARGUMENT IN REPLY

### A. Vocational Examinations are Within the Purview of Rule 35.

Plaintiffs' opposition, relying on *Storms v. Lowe's Home Centers, Inc.*, 211 F.R.D. 296 (W.D.Va. 2002), claims that this Court should deny the United States' motion because a vocational rehabilitation examination is not a mental or physical examination permitted by Rule 35. *See* Opp'n pp. 1, 3–4. Rule 35 allows a court to order "a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). There is no provision in Rule 35 that excludes vocational rehabilitation examinations. When performing a vocational assessment, the vocational expert is taking into account the relevant mental and physical abilities of the individual in order to assess the individual's employability. Courts have repeatedly rejected the *Storms* court's holding that vocational assessments do not constitute a

"physical or mental examination" pursuant to Rule 35. *See Wegner v. Dahlquist*, No. 14-CV-01623-PAB-NYW, 2015 WL 4197081, at *2 (D. Colo. July 13, 2015) (rejecting *Storms* assertion that vocational assessments do not fall within Rule 35); *Prager v. Campbell Cnty. Mem'l Hosp.*, No. 10-CV-202-J, 2011 WL 13136614, at *2 (D. Wyo. May 18, 2011) (same). Even the *Storms* court observed that it could not "find a case in which a court holds that a vocational assessment does not fall within the Rule's definition of a 'physical or mental examination.'" *Storms*, 211 F.R.D. at 297.

Additionally, district courts nationwide, including this district, have routinely allowed vocational examinations pursuant to Rule 35. *See e.g.*, *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 391–93 (S.D. Tex. 2013); *Wegner*, 2015 WL 4197081, at *2; *Braecklein v. Johnson*, No. 2:11-CV-1679-RMG, 2012 WL 12897129, at *1–*2 (D.S.C. Feb. 28, 2012); *Berry v. Mi-Das Line S.A.*, No. CV408-159, 2009 WL 3213506, at *2–*4 (S.D. Ga. Oct. 5, 2009); *Perez v. United States*, 05-cv-1790-BEN-AJB, 2008 WL 474390, *1–*3 (S.D. Cal. Feb. 20, 2008); *Norfolk Dredging Co. v. M/V A.V. KASTNER*, No. CIV.A. WMN-02-662, 2003 WL 23305262, at *2 (D. Md. Oct. 8, 2003).

**B. The United States' Vocational Rehabilitation Expert is Qualified to Perform a Rule 35 Examination.**

Plaintiffs claim that the United States' vocational rehabilitation expert is not suitably licensed or certified to conduct a Rule 35 exam. *See* Opp'n pp. 5–6. Essentially plaintiffs are arguing that vocational rehabilitation experts as a general rule are not suitably licensed or certified to perform Rule 35 examinations. This cannot be the rule. "Although [the vocational rehabilitation expert] is not a physician or a psychologist, Rule 35 was amended in 1991 to allow parties to seek examinations by 'other certified or licensed professionals ... who are not

physicians or clinical psychologists, but who may be well-qualified to give valuable testimony about the physical or mental condition that is the subject of dispute.'" *Braecklein*, 2012 WL 12897129, at *1 (quoting Fed. R. Civ. P. 35 advisory committee notes) (holding that the vocational rehabilitation expert was qualified to perform a Rule 35 examination). And as noted above, courts have repeatedly permitted vocational rehabilitation experts to conduct Rule 35 examinations. Furthermore, parties have also agreed to such exams without even needing court involvement. *See Rich v. Diana Consulting Servs. LLC,* No. CV SAG-21-1670, 2022 WL 1289663, at *3 (D. Md. Apr. 29, 2022) (noting that "Plaintiff's counsel agreed to examinations by Defendant's neurologist and vocational expert . . . ."). Here, the United States vocational expert is qualified to give valuable testimony about Mr. Highsmith's physical and mental capabilities related to his employability.

**C. There is Good Cause for the Court to Order a Rule 35 Vocational Examination of Mr. Highsmith.**

"The party requesting an order to compel a Rule 35 examination must demonstrate that (1) the physical or mental condition of the person to be examined is genuinely in controversy and (2) there is good cause to order the particular examination requested." *Rich*, 2022 WL 1289663, at *3 (citing *Schlagenhauf*, 379 U.S. at 118 (1964)).[1] While the "in controversy" and "good cause" elements are separate requirements they "are necessarily related." *Schlagenhauf*, 379 U.S.

---

[1] Additionally, the order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B). The United States vocational rehabilitation expert, Joseph H. Rose is available to conduct the Rule 35 examination of Mr. Highsmith on August 2, 2022, at 10 a.m. EDT at 400 East Pratt St., Suite 800, Baltimore, M.D. 21202, or at another date, time, and location (including the possibility of videoconference) that is mutually agreed to by the parties. In his declaration, attached at Exhibit 1, Mr. Rose outlines his qualifications and the scope of the examination. Mr. Rose's CV is attached to his declaration.

at 119. The Supreme Court has held that where a plaintiff in a negligence action asserts a mental or physical injury, that plaintiff "places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id*. Both requirements are met here.

Plaintiffs cannot and do not dispute that Mr. Highsmith has placed his employability and lost earning capacity in controversy.[2] He seeks millions of dollars in alleged future lost wages.[3] Indeed, plaintiffs' claim for lost wages is, by far, the largest category of damages being claimed in this lawsuit. Plaintiffs appear to be asserting that Mr. Highsmith's physical and mental injuries will potentially diminish or eliminate his ability to work and earn future wages.

Because plaintiffs' have placed Mr. Highsmith's physical capabilities related to his future employability in controversy, there is good cause for this court to order a vocational examination for the United States to determine the existence and extent of such asserted injury. *See Schlagenhauf*, 379 U.S. at 119. The United States' vocational expert seeks to conduct his comprehensive and standard examination to assess Mr. Highsmith's current and future employability. Refusing to allow this examination may hamper the United States' ability to properly defend against plaintiffs' lost earning capacity and future lost wages claim. Therefore, the United States should be allowed to have its vocational expert conduct his standard

---

[2] Specifically, plaintiffs' Complaint alleges that Mr. Highsmith has suffered multiple physical and mental conditions, including "severe and permanent brain damage and neurologic injury" along with "post-traumatic stress disorder," which he claims has caused him to suffer, among other things, "diminished earning capacity and lost future wages." Compl. ¶ 76, ECF No. 1.

[3] In his responses to the United States First Set of Interrogatories, Mr. Highsmith claims $3 million dollars for his future lost earning capacity and/or future lost wages due to his speculation that he will have to leave the workforce early. The plaintiffs' vocational economist expert report opines that Mr. Highsmith's future lost wages will be between $1,518,367 and $2,352,634

examination, including a non-invasive interview of Mr. Highsmith, especially given the specialized nature of the field of vocational rehabilitation. *See Rich*, 2022 WL 1289663, at *4 (holding that "[g]ood cause has been found when an examination is needed to defend against the claim of an opposing party and '[w]here the average lay person would have difficulty evaluating the nature, extent, and cause of the claimant's injuries[.]'") (quoting *Jones v. Campbell Univ., Inc.*, No. 5:20-CV-29-BO, 2020 WL 4451173, at *4 (E.D.N.C. Aug. 3, 2020)).

Plaintiffs' opposition asserts three reasons why the United States has not met the "good cause" requirement: (1) the United States has not shown an inability to obtain the information elsewhere; (2) the United States has obtained all necessary records in discovery; and (3) plaintiffs' have not disclosed a vocational expert who has interviewed Mr. Highsmith. Each of these arguments is unavailing, and unsupported by the relevant case law. To the contrary, it is clear that the United States has demonstrated good cause for a Rule 35 examination of Mr. Highsmith.

### 1. The information sought is not available elsewhere.

First, plaintiffs claim that the United States lacks good cause because it has not shown an inability to obtain the information otherwise. Opp'n p. 4. While the Supreme Court in *Schlagenhauf* acknowledged that "[t]he ability of the movant to obtain the desired information by other means is also relevant" to the good cause analysis, the court did not set such a requirement. *Schlagenhauf*, 379 U.S. at 118. Even if there were such a requirement, the United States has met it here. The vocational expert's assessment is not simply a matter of reviewing records. It also includes conducting an interview and independent vocational/occupational assessment of the individual. Plaintiffs seem to insinuate that the vocational assessment should have been performed at Mr. Highsmith's deposition. Counsel for the United States is not a

vocational rehabilitation specialist. Moreover, if this were a valid argument, a defendant would be forced to choose between deposing plaintiff and a Rule 35 vocational examination. This is clearly not the rule. See Berry, 2009 WL 3213506, at *2 (approving of defendants' argument that "'[t]o expect Defendants counsel to conduct a vocational test on the Plaintiff during his deposition is unrealistic and improper based on the qualifications necessary to conduct such an exam.'") (quoting Doc. 75 at 3)). Additionally, no vocational rehabilitation assessment by either parties' expert has been performed that Mr. Rose could rely upon. The lack of any vocational rehabilitation assessment and the fact that Mr. Highsmith is claiming lost future wages even though he is still working demonstrate that the information sought through the requested interview is not elsewhere available.

### 2. The availability of other discovery does not preclude a Rule 35 examination.

Second, plaintiffs' argue that because the United States has conducted fulsome discovery and obtained Mr. Highsmith's medical records, tax records, employment records, and deposed Mr. Highsmith and some of his family members that Mr. Rose should be forced to develop his opinion based on those records and not allowed to perform his customary evaluation and interview of Mr. Highsmith.[4] Courts have routinely rejected this reasoning.[5] See Ornelas, 292 F.R.D. at 391–92 (holding that "a plaintiff may not avoid a Rule 35 examination simply on the

---

[4] In their Opposition, plaintiffs recite the discovery conducted in this matter. Opp'n pp. 4–5. It should be noted that: (1) the United States only propounded one set of interrogatories and one set of requests for production on each of the plaintiffs, but because plaintiffs repeatedly produced deficient responses, they needed to supplement their responses approximately six times; (2) plaintiffs signed several authorizations because plaintiffs refused to sign one general authorization; (3) plaintiffs did not provide Mr. Highsmith's tax records or earning statements, rather, counsel for the United States obtained these records from third parties.

[5] Additionally, "[p]laintiff[s'] concern about an 'unsupervised deposition' is misplaced." Wegner, 2015 WL 4197081, at *3 (reasoning that "[p]resumably, [the plaintiff] will tell the truth, regardless of whether he is under oath and being 'supervised' by counsel . . . .").

grounds that other sources of information, such as medical reports and depositions of plaintiff's treating physicians, are available."); *Jackson v. Entergy Operations, Inc.*, No. CIV.A. 96-4111, 1998 WL 28272, at *2 (E.D. La. Jan. 26, 1998) (same); *Perez*, 2008 WL 474390, at *1–*2 (rejecting the plaintiff's argument that defendants failed to demonstrate good cause for their Rule 35 motion requesting a vocational rehabilitation expert examination of the plaintiff because the information sought is readily available).

Plaintiffs rely on *Storms* and *In re: Falcon Workover Co., Inc.*, 186 F.R.D 352 (E.D.La. 1999) for their assertion that courts have found defendants do not demonstrate good cause where the information is available by other means. Opp'n p. 3. These cases are distinguishable. In both cases, vocational assessments were available to the defendants' vocational experts and the courts held there was not a need for additional examinations. *See Storms*, 211 F.R.D. at 298; *In re: Falcon* 186 F.R.D at 353. Here, there has been no vocational assessments performed. Furthermore, courts have increasingly declined to apply the holding from these two cases. *See Ornelas* 292 F.R.D. at 393 (collecting cases).

### 3. Plaintiffs' failure to disclose a vocational expert does not preclude a Rule 35 examination.

Third, Plaintiffs appear to argue that the United States lacks good cause because plaintiffs' have not disclosed their own vocational expert who interviewed Mr. Highsmith. *See* Opp'n pp. 6–7. The ability of defendants to fully evaluate and defend against a plaintiff's claim for lost earning capacity cannot be limited by a plaintiff's decision not to disclose a vocational expert. If the existence of an expert for the non-moving plaintiff were a requirement for defendant's ability to engage its own expert and interview plaintiff, then plaintiff could put employability in issue, but prevent an expert for defendant from obtaining the necessary data on

which to base opinions. This would clearly thwart the intent of Rule 35(a). In *Perez*, the plaintiff contended that the defendants failed to demonstrate good cause for their vocational rehabilitation expert to examine the plaintiff because, in part, plaintiff was not going to call a vocational rehabilitation expert. *Perez*, 2008 WL 474390, at *2. The court rejected plaintiffs' arguments and found good cause where there had been no recent evaluation of plaintiff's future lost wages and diminution of earning capacity. *Id*. Here, although several of plaintiffs' experts have made statements related to his employability there has been no evaluation of Charles Highsmith's employability by a vocational rehabilitation expert.

### III. CONCLUSION

For the foregoing reasons this Court should grant the United States' Motion to Compel a Rule 35 Vocational Examination of Plaintiff Charles Highsmith.

DATE: July 15, 2022

Respectfully submitted,

BRIAN BOYNTON
Acting Assistant Attorney General
Civil Division

JAMES G. TOUHEY, JR.
Director, Torts Branch

CHRISTOPHER R. BENSON
Assistant Director, Torts Branch

 /s/ Cate E. Cardinale
Cate E. Cardinale
Trial Attorney
D. Md. Bar No: 814756
S.C. Bar No: 103149
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 888
Washington, DC 20044
(202) 514-1067
cate.cardinale@usdoj.gov

*Counsel for the United States of America*