

# U.S. Department of Justice

### *Civil Division, Torts Branch*
### *Federal Tort Claims Act Staff*

| | | |
|---|---|---|
| *Jennifer H. Gans* | *P.O. Box 888* | *Telephone: (202) 616-4290* |
| *Trial Attorney* | *Benjamin Franklin Station* | *Facsimile: (202) 616-5200* |
| | *Washington, D.C. 20044* | *jennifer.h.gans@usdoj.gov* |

CRB:JHGans
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

November 18, 2022

VIA CM/ECF

The Honorable Theodore D. Chuang
United States District Court for the District of Maryland
6500 Cherrywood Lane
Greenbelt, Maryland 20770

Re:   *Highsmith v. United States*
      Civ No. 20-cv-03249-TDC

Dear Judge Chuang:

Pursuant to the Joint Fifth Amended Scheduling Order, ECF No. 51, Defendant United States of America submits this Notice of Intent to File a Pretrial Dispositive Motion. The United States intends to file a Motion for Partial Summary Judgment, in response to Plaintiffs' Complaint, ECF No. 1. The arguments and bases for those arguments the United States intends to make in support of its Motion are summarized as follows.

## Factual Background

Plaintiffs have alleged medical malpractice and a lack of informed consent based on the surgical treatment of Plaintiff Major (Ret.) Charles Highsmith's head and neck cancer at Walter Reed National Military Medical Center ("Walter Reed") in Bethesda, Maryland on September 11, 2018.  Due to a complication during surgery, Plaintiff Highsmith's right internal carotid artery was ligated.  He later had one stroke in his right frontal lobe and one stroke in his right insular lobe.  Plaintiff Highsmith has since returned to work as government contractor, specializing in anti-terrorism efforts and based at the Pentagon.

Plaintiff Highsmith's cancer was discovered in the summer of 2018, after he had presented with a visible lump on his neck to Dr. Pryor Brenner at Fort Belvoir Community Hospital.  The lump was confirmed to be a lymph node necrotic with cancer that had spread from a primary tumor site elsewhere in the body.  Dr. Brenner, however, is a general ENT ("ears, nose, and throat") physician, also known as an otolaryngologist, and does not specialize in head and neck cancer.  Once cancer was confirmed, Dr. Brenner outlined for Plaintiff Highsmith the

Letter to The Honorable Theodore D. Chuang
11/18/2022
Page 2

general treatment options for cancer, including radiation treatment and surgical treatment, and placed consults for Plaintiff Highsmith for specialists in those treatment areas.

Dr. Wayne Cardoni at Walter Reed responded to Dr. Brenner's consult request. An otolaryngology surgeon with expertise in treating head and neck cancer, Dr. Cardoni investigated Plaintiff Highsmith's cancer over the course of two weeks. By means of a physical examination, a biopsy, and further imaging, Dr. Cardoni discovered that the primary cancer site was Plaintiff Highsmith's right tonsil. As a result of those investigations, surgery and radiation were determined to be appropriate treatment options for Plaintiff Highsmith's particular cancer.

Dr. Cardoni then called Plaintiff Highsmith to discuss those treatment options. Dr. Cardoni's office followed up with Plaintiff Highsmith to schedule the cancer treatment surgery for September 11, with a pre-operative appointment on September 10 and a radiation oncologist appointment on September 10. Plaintiff Highsmith attended the pre-operative appointment and the surgery, but he did not attend the radiation oncology appointment.

At the pre-operative appointment, there was a full discussion of the proposed cancer treatment surgery with Plaintiff Highsmith. Plaintiff Highsmith's surgery was to be staged in two parts: the first part would be a "neck dissection," which involved the removal of other lymph nodes in the neck that could be harboring cancer; and the second, to be performed at a later date, would be a trans-oral robotic surgery ("TORS") to treat the primary cancer site in his right tonsil.

Plaintiff Highsmith's discussion was with both surgeons who would perform the operation the next day. Dr. Charles Yang, a fourth year resident who would be assisting on the neck dissection surgery, first talked with Plaintiff Highsmith about the risks, benefits, and alternatives to the neck dissection surgery, as he documented in the medical records. Dr. Yang documented his discussion of the risks of surgery, including the low risk of injury to the carotid arteries and strokes. After Dr. Yang talked with Plaintiff Highsmith, Dr. Cardoni then had an informed consent discussion with Plaintiff Highsmith that again included the risks, benefits, and alternatives to surgery, including radiation treatment. At his deposition, Plaintiff Highsmith did not remember either conversation. There is, however, contemporary evidence demonstrating that Plaintiff Highsmith chose to proceed with surgery after receiving information on the risks, benefits, and alternatives to surgery: on September 10, 2018, he signed a form that memorialized his consent to a neck dissection surgery after having had a discussion of the risks, benefits, and alternatives to this surgery. The surgery then took place on September 11, 2018.

### Legal Bases for the United States' Proposed Motion

Plaintiff Highsmith has two key claims in this lawsuit: medical negligence (Count I) and lack of informed consent (Count II). As to Count II, Plaintiff Highsmith alleges that the Walter Reed surgeons failed to obtain his informed consent to the surgical treatment of his cancer because he was not informed of the radiation treatment alternative. *See* Compl. ¶¶ 29, 34, 39, 66-78. By means of one or both of those claims, Plaintiff Highsmith now alleges permanent neurological

Letter to The Honorable Theodore D. Chuang
11/18/2022
Page 3

impairments as a consequence of the stroke and has asserted past and future economic and non-economic damages.  Plaintiff Sheila Highsmith, his wife, also claims loss of consortium.

The United States intends to move for partial summary judgment on Plaintiff Highsmith's informed consent cause of action because there is no genuine dispute of material fact that the Walter Reed surgeons informed Plaintiff Highsmith of the alternative treatment of radiation. If the informed consent claim were dismissed, the parties would need to present fewer witnesses and documents at trial.

**A. There is no dispute that Plaintiff Charles Highsmith consented to cancer surgery after Walter Reed surgeons informed him of the risks, benefits, and alternatives to surgery.**

To sustain his burden of proof for a claim of failure to obtain informed consent under Maryland law, a plaintiff must establish facts supporting the three elements of the negligence-based claim: (1) the duty to have an informed discussion with a patient that includes the benefits, risks, and alternatives to the proposed treatment that would be material to a reasonable patient; (2) a breach of that duty to provide that information; and (3) this breach proximately caused plaintiff's injury. *Harris-Reese v. United States*, CV TDC-19-1971, 2022 WL 2835776, at *21–22 (D. Md. July 20, 2022) (citing *Shannon v. Fusco*, 89 A.3d 1156, 1169 (Md. 2014)).  "This duty to disclose is said to require a physician to reveal to his patient the nature of the ailment, the nature of the proposed treatment, the probability of success of the contemplated therapy and its alternatives, and the risk of unfortunate consequences associated with such treatment." *McQuitty v. Spangler*, 976 A.2d 1020, 1032 (Md. 2009) (citations and quotations omitted).

While Plaintiff Highsmith claims that he was not adequately informed of the alternative of radiation treatment, there can be no genuine dispute that the Walter Reed surgeons met their duty to disclose.  It is undisputed that surgery and radiation were the two options to treat a patient with Plaintiff Highsmith's type of cancer.  It is undisputed that the Walter Reed surgeons adequately disclosed the risks and benefits of the neck dissection surgery to treat Plaintiff Highsmith's cancer, including the exact risks that materialized here.

There is no dispute that, the day before surgery, Plaintiff Highsmith attended a pre-operative visit that included an informed consent discussion by both surgeons.  Both surgeons gave Plaintiff Highsmith information on the risks, benefits, and alternatives to surgery, including radiation treatment, to treat Plaintiff Highsmith's cancer.  Additionally, Plaintiff Highsmith was aware of radiation therapy from conversations with Dr. Brenner and Dr. Cardoni's staff, who had reminded him of an appointment with radiation oncology on September 10, 2018.  Plaintiff Highsmith does not remember these conversations about radiation therapy and did not attend the radiation oncology appointment on September 10, but his signature on the informed consent document supports the United States' position that the surgeons discharged their duty to disclose. In sum, the records reflect, the testimony corroborates, and Plaintiff Highsmith's presence at the surgery itself confirms that Plaintiff Highsmith chose surgery to remove the potentially cancerous

Letter to The Honorable Theodore D. Chuang
11/18/2022
Page 4

lymph nodes in his neck after being adequately informed of the risks, benefits, and alternatives to cancer surgery.

Because there is no dispute that the surgeons discharged their duties to disclose adequate information on the risks, benefits, and alternatives to surgery to treat Plaintiff Highsmith's cancer, the United States intends to move for partial summary judgment on this claim to streamline this case for trial.

The parties have not met and conferred to discuss whether the matters at issue can be resolved without a motion.

Sincerely,

BRIAN BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

JAMES G. TOUHEY, JR.
Director, Torts Branch

CHRISTOPHER R. BENSON
Assistant Director, Torts Branch

*/s/ Jennifer H. Gans*
JENNIFER H. GANS
Trial Attorney
D. Md. Bar No. 94916
D.C. Bar No. 495176
Torts Branch, Civil Division
United States Department of Justice
Benjamin Franklin Station
P.O. Box 888
Washington, DC 20044
Phone:   (202) 616-4290
Fax:      (202) 616-5200
Jennifer.H.Gans@usdoj.gov

cc:     Seth Cardeli (via CM/ECF)
        Abigail Marshall (via CM/ECF)